**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

L.L., by and through next friend
Nancy Hubbard, et al.,

       Plaintiffs,

v.                                                                Civ. No. 2:25-cv-00471-MIS-KRS

ALAMOGORDO POLICE
DEPARTMENT, et al.,

       Defendants.

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR
QUALIFIED IMMUNITY AND DISMISSING WITHOUT PREJUDICE STATE LAW
CLAIMS**

THIS MATTER is before the Court on Defendants Alamogordo Public School District

("APS"), Alamogordo Board of Education ("Board of Education"), Angela Cadwallader in her

official capacity as the President of the Alamogordo Board of Education ("President

Cadwallader"), Michael Crabtree in his official capacity as Superintendent of the Alamogordo

Public School District ("Superintendent Crabtree"), and Laigha Boyle individually and in her

official capacity as Principal of Mountain View Middle School ("Principal Boyle," and

collectively "Defendants" or "APS Defendants")'s Motion for Judgment on the Pleadings and for

Qualified Immunity, ECF No. 47, filed August 29, 2025.[1]  Plaintiffs L.L., Nancy Hubbard, and

Raymond Laner filed a Response on September 12, 2025, ECF No. 63, to which Defendants filed

a Reply on September 29, 2025, ECF No. 82.  Upon review of the Parties' submissions, the record,

and the relevant law, the Court will **GRANT** the Motion, issue judgment on the pleadings as to

---

[1] Another group of Defendants that includes the Alamogordo Police Department ("APD Defendants") filed a separate Motion for Judgment on the Pleadings.  ECF No. 50.  To avoid confusion, this Order does not include APD Defendants in its definition of Defendants.

the federal law claims (Counts I and III), and dismiss without prejudice the state law claims (Counts II and IV).

## I.    Background[2]

On the morning of November 3, 2024, while on the campus of Mountain View Middle School ("MVMS"), a public school in the District of New Mexico, a female student ("Female Student") confided in her fellow student, L.L., that a male student ("Male Student") at MVMS touched the Female Student inappropriately at a school dance. Am. Compl. ¶¶ 22, 24, ECF No. 14. At the time, L.L was thirteen years old. Id. ¶ 21. Later that day, the Female Student and L.L. went to Principal Boyle's office to report the incident. Id. ¶ 24.

The next day, November 4, 2024, the school contacted the Alamogordo Police Department ("APD") to report the incident, and Officer Aaron Ramriez reported to the school to investigate "criminal sexual contact." Id. ¶¶ 26-27, 30. Officer Ramirez interviewed the Female Student in the presence of Principal Boyle, an unidentified male believed to be an MVMS security guard, and the Female Student's father. Id. ¶¶ 32-33. During the interview, the Female Student's father stated that the Female Student "felt uncomfortable around the Male Student and that the Male Student had touched a girl under her skirt the past school year and had raped another of" the Female Student's friends. Id. ¶ 34. The Female Student indicated that four other MVMS students, including Plaintiff L.L., may have witnessed the incident, may have information regarding other incidents involving the Male Student, and/or may have been "victims of inappropriate or illegal behavior or actions of the Male Student." Id. ¶¶ 35, 44. One incident was alleged to have taken

---

[2] The Court accepts the truth of all well-pleaded factual allegations in Plaintiffs' Amended Complaint and draws all reasonable inferences in Plaintiffs' favor for the purposes of Defendants' Motion.

place on a school bus, but no information was given about where other incidents took place.  Id. ¶ 36.

After interviewing the Female Student, Officer Ramirez contacted his supervisors who instructed Officer Ramriez to set up "safehouse" interviews at an off-campus location—Kids, Inc.—for L.L. and other students who may have witnessed the incident (or similar incidents).  Id. ¶¶ 64-65, 68-69.  "Kids, Inc., is a child advocacy center serving Otero[]County and Lincoln County, New Mexico that collaborates with law enforcement agencies to conduct interviews of children."  Id. ¶ 70.

School officials summoned L.L. and two other girls, sequentially, to the MVMS administrative office.[3]  Id. ¶ 69.  Officer Ramirez met each girl when they arrived at the office and transported them to Kids, Inc. for an interview before returning them to the MVMS office.  Id.

MVMS school officials summoned L.L. to the MVMS administrative office around 1:20 p.m.  Id. ¶ 82.  When she arrived, Officer Ramirez told L.L. "he 'had to take her' to be questioned or answer some questions."  Id. ¶ 86.  Officer Ramirez told L.L. that she could take her backpack and belongings with her or leave them in the school office; she chose to leave her belongings in the office.  Id. ¶ 88.  Officer Ramirez then transported L.L. to Kids, Inc. where a staff member, acting on Officer Ramirez's instructions, asked L.L. about her interactions with the Male Student and her knowledge of inappropriate interactions between the Male Student and other students.  Id. ¶¶ 91, 218.  L.L. said that the Male Student had inappropriately touched L.L.'s friend at an MVMS dance and looked up that girl's skirt.  Id. ¶ 93.  L.L. also said that the Male Student hugged L.L.

---

[3]        The fourth girl is homeschooled and was not present at MVMS. *Id.* ¶¶ 35, 69.

from behind and made L.L. feel uncomfortable.  Id.  Officer Ramirez returned L.L. to the MVMS office at approximately 1:59 p.m.  Id. ¶¶ 95-96.

MVMS staff did not contact L.L.'s grandmother and legal guardian, Nancy Hubbard, prior to removing her from class for the interview.  Id. ¶¶ 97-99.

## II.    Relevant Procedural Background

On May 30, 2025, Plaintiffs filed the operative Amended Complaint against APD, the City of Alamogordo, APD Chief of Police David Kunihiro, and Officer Ramirez (collectively, "APD Defendants"), as well as Alamogordo Municipal School District Number One (a/k/a Alamogordo Public School District), the Alamogordo Board of Education, President Cadwallader, Superintendent Crabtree, and Principal Boyle.  Id. ¶¶ 12-19.  As relevant here:

- Count I alleges a violation of L.L.'s right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures against the APD Defendants, Principal Boyle in her individual capacity, and the Alamogordo Board of Education through President Cadwallader and Superintendent Crabtree in their official capacities, pursuant to 42 U.S.C. § 1983, id. ¶¶ 203-54;

- Count II alleges a violation of L.L.'s right under Article II, Section 10 of the New Mexico Constitution to be free from unreasonable seizures against the City of Alamogordo and the Alamogordo Board of Education through President Cadwallader and Superintendent Crabtree in their official capacities, pursuant to the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-3, id. ¶¶ 255-80;

- Count III alleges a violation of Ms. Hubbard's procedural and substantive due process rights to the care, custody, and control of L.L. under the Fourteenth Amendment to the United States Constitution against the APD Defendants, Principal Boyle in her individual

capacity, and the Alamogordo Board of Education through President Cadwallader and Superintendent Crabtree in their official capacities, pursuant to 42 U.S.C. § 1983, id. ¶¶ 281-316;

- Count IV alleges a violation of Ms. Hubbard's procedural and substantive due process rights to the care, custody, and society of L.L. under Article II, Section 18 of the New Mexico Constitution against the City of Alamogordo and the Alamogordo Board of Education through President Cadwallader and Superintendent Crabtree in their official capacities, pursuant to the NMCRA, id. ¶¶ 317-28.[4]

Counts V, VI, and VII are asserted only against APD Defendants.[5]  See id. ¶¶ 329-86.

---

[4]    The Amended Complaint asserts claims against President Cadwallader and Superintendent Crabtree in their official capacities only.  See Am. Compl. at 1, 36, 45, 49, 56; see also id. ¶¶ 17-18.  The Amended Complaint names Principal Boyle as a defendant individually and in her official capacity, id. ¶ 15, but Counts I and III only name her in her individual capacity, see id. at 36, 49.

"[O]fficial capacity suits are merely another way of pleading an action against the entity of which an officer is an agent." Rubio v. Turner Unified Sch. Dist. No. 202, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  If the government entity of which the officer is an agent is named as a defendant, the official capacity claims against the agent are duplicative of the claims against the entity.  Id. (citing Graham, 473 U.S. at 165-66).

Because the government entities of which President Cadwallader, Superintendent Crabtree, and Principal Boyle are agents are also named as defendants, the claims asserted against them in their official capacities are subject to dismissal as duplicative of the claims against the entities.  Id. (citing Sims v. Unified Gov't of Wyandotte Cnty., 120 F. Supp. 2d 938, 945 (D. Kan. 2000)); see also Vondrak v. City of Las Cruces, No. CIV–05–0172 JB/LFG, 2009 WL 1300945, at *2 n.1 (D.N.M. Mar. 30, 2009); ("There is no sound reason to allow the official-capacity claims to remain, given the case law indicating that, where the municipality is already named as a defendant, such claims are redundant."); Doe v. Farmington Mun. Schs., Civ. No. 21-103 SCY/KK, 2022 WL 9956170, at *2 (D.N.M. Oct. 17, 2022) (observing that motions to dismiss duplicative official capacity claims "are routinely granted"); Browder v. City of Albuquerque, No. CIV 13-599 RB/KBM, 2014 WL 12487667, at *3 (D.N.M. Mar. 13, 2014) ("[I]t is common for Plaintiffs to name both the municipality and officer in an official capacity as Defendants. In these cases, courts routinely dismiss official capacity claims as redundant of the claims against the municipal entity itself.").  Indeed, the Court has already dismissed the official capacity claims asserted against Chief Kunihiro in his official capacity for this very reason.  ECF No. 93.

Regardless, the Court finds that all of the APS Defendants are entitled to judgment on the pleadings as to Counts I and III for the reasons discussed in this Order.

[5]    The Court does not address the claims asserted against the APD Defendants in this Order.

On August 29, 2025, the APS,[6] the Alamogordo Board of Education, President Cadwallader, Superintendent Crabtree, and Principal Boyle filed the instant Motion for Judgment on the Pleadings and for Qualified Immunity.  ECF No. 47.  Plaintiffs filed a Response, ECF No. 63, to which Defendants filed a Reply, ECF No. 82.

The APD Defendants have filed a separate Motion for Judgment on the Pleadings and for Qualified Immunity, see ECF No. 50, which is fully briefed, see ECF Nos. 61, 76.  The Court grants that Motion by separate Order issued contemporaneously herewith.

The APD Defendants filed a separate Motion for Judgment on the Pleadings as to Supervisory and Municipal Liability, ECF No. 52, which is fully briefed, see ECF Nos. 62, 75. However, the Court need not reach that Motion in light of the findings and conclusions made in the separate Order granting the APD Defendants' Motion for Judgment on the Pleadings and for Qualified Immunity issued contemporaneously herewith.

## III.    Legal Standard

### a.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."  Atl. Richfield Co. v. Farm Cred. Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992)).  To survive a Rule 12(b)(6) motion, the complaint "must

---

[6]    Although the Amended Complaint names "Alamogordo Municipal School District # 1, a/k/a, the Alamogordo Public School District" as a party Defendant, ECF No. 14 ¶ 16, it does not name APS in the title of any of its claims (but it does name the other APS Defendants in the title of its claims), see id. at 36, 45, 49, 56, 58, 65, 67. To the extent that Plaintiffs intended to assert Counts I through IV against APS, the Court finds that APS is entitled to judgment on the pleadings as to Counts I and III for the same reason the Alamogordo Board of Education is entitled to judgment on the pleadings as to Counts I and III, as discussed in this Order.

contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court takes all well-pleaded facts as true and draws all reasonable inferences in the light most favorable to the non-moving party.  Doe v. Woodard, 912 F.3d 1278, 1285 (10th Cir. 2019).  The factual allegations "must be enough to raise a right to relief above the speculative level."  Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted); see also Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.").

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action" because "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555 (citation omitted). Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible."  Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

"To survive a motion for judgment on the pleadings based on qualified immunity, plaintiffs must allege sufficient facts that show—when taken as true—the defendant plausibly violated [their] constitutional rights, which were clearly established at the time of violation."  Hunt v. Montano, 39 F.4th 1270, 1278 (10th Cir. 2022) (alteration in original) (internal quotation marks and citation omitted).  "Granting a motion for judgment on the pleadings is a final judgment on

7

the merits." Jorgensen v. Larsen, No. 90–4048, 1991 WL 55457, at *2 (10th Cir. Apr. 12, 1991) (unpublished) (citing 51 Wright & Miller's Federal Practice and Procedure § 1372 (1990)); see also Republic Steel Corp. v. Penn. Eng'g Corp., 785 F.2d 174, 177 n.2 (7th Cir. 1986) ("[A] motion under Rule 12(c) is directed towards a final judgment on the merits.").

### b.    Qualified Immunity

A person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  However, "[i]ndividual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." Est. of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014) (citation modified).

The doctrine of qualified immunity protects government officials from suit unless: "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." Truman v. Orem City, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014)).  The court may address these two inquiries in any order. Pearson v. Callahan, 555 U.S. 223, 236 (2009); McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019).  If the plaintiff fails to satisfy either part of the test, the court must grant qualified immunity. McCowan, 945 F.3d at 1282 (quoting Est. of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019)).

A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (citation and quotation marks omitted). Clearly established law cannot be defined "at a high level of generality," it must be particularized to the facts of the case. Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). But a plaintiff need not find a prevailing "case with exact corresponding factual circumstances," Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001), and "officials can still be on notice that their conduct violates established law even in novel factual circumstances," Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007)); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002). The dispositive question is whether the unlawfulness of the official's actions was apparent considering pre-existing law. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When a defendant asserts qualified immunity at the pleadings stage, "the court analyzes the defendant's conduct as alleged in the complaint"—subjecting the defendant to a more rigorous standard of review. Truman, 1 F.4th at 1235 (citation modified). In determining allegations against multiple defendants, the complaint must clearly state "who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." Id.; see also Robbins v. Oklahoma, 519 F.3d 1242, 1249 (10th Cir. 2008) ("[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.").

## IV.    Discussion

Defendants argue that Principal Boyle is entitled to qualified immunity on the Section 1983 claims. Mot. at 5-11. They further argue that because respondeat superior is inapplicable in Section 1983 cases, the Board of Education, President Cadwallader and Superintendent Crabtree

are not proper parties for the Section 1983 claims.  Id. at 11-13.  The APS Defendants also argue they are immune from liability for the New Mexico State Law claims pursuant to N.M. Stat. Ann. § 32A-4-5 (1978), which shields school personnel acting in good faith from civil liability when facilitating interviews by law enforcement officials investigating child abuse.  Id. at 13.  Finally, President Cadwallader and Superintendent Crabtree argue the NMCRA claims fail because N.M. Stat. Ann. § 41-4A-2 (1978) only permits Plaintiffs to sue public bodies, not individual persons.  Id. at 14.

Plaintiffs argue that Counts I and III state claims under Section 1983.  Resp. at 4-11, 15-21.  They further argue Defendants are not entitled to qualified immunity on Counts I and III.  Id. at 14, 21-23.  As to the state law claims, Plaintiffs argue Defendants are not immune under N.M. Stat. Ann. § 32A-4-5 because the Amended Complaint does not allege that Defendants were investigating child abuse as that term is defined in § 32A-4-2.  Id. at 11-13.  Plaintiffs also impermissibly attempt to incorporate arguments made in their Response in Opposition to the City of Alamogordo's Motion for Judgment on the Pleadings as to Supervisory and Municipal Liability, ECF No. 52, via District of New Mexico Local Rule of Civil Procedure 7.1, Resp. at 23.  Pursuant Rule 7.1, "[a] party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper."  D.N.M.LR-Civ. 7.1(a) (emphasis added).  Neither the Local Rules of Civil Procedure nor the Federal Rules of Civil Procedure permit a party to adopt by reference their own motion or other paper.  Consequently, the Court will not consider their Response to the City's Motion.

In their Reply, Defendants argue that Plaintiffs failed to defeat Principal Boyle's qualified immunity defense because (1) the Amended Complaint does not allege Fourth or Fourteenth Amendment violations and (2) Plaintiffs fail to identify case law clearly establishing the rights

asserted in Counts I and III.  ECF No. 82 at 1-10.  Defendants maintain that the Board of Education, President Cadwallader, and Superintendent Crabtree are not proper parties for the Section 1983 claims in Counts I and III and cannot be held liable for them.  Id. at 10-11.  Finally, Defendants argue that they are immune to the state claims in Counts II and IV under N.M. Stat. Ann. § 32A-4-5, and that individual Defendants cannot be held liable under the New Mexico Civil Rights Act. Id. at 11-12.

Because the Court finds that Defendants are entitled to judgement on the pleadings as to the federal claims, the Court limits its analysis to Counts I and III, declines to exercise supplemental jurisdiction over the state law claims, and, as such, dismisses without prejudice Counts II and IV.[7]

     **a.**     **Count I: Fourth Amendment seizure**

The Fourth Amendment guarantees citizens the right to be "secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'"  Jones v. Hunt, 410 F.3d 1221, 1225 (10th Cir. 2005) (quoting Michigan v. Chesternut, 486 U.S. 567, 573 (1988)).  The Tenth Circuit has cautioned that courts "must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish."  Couture v. Bd. of Educ. of Albuquerque Pub. Schs., 535 F.3d 1243, 1250-51 (10th Cir. 2008).  "To qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance."  Id.

---

[7]       The Court has carefully considered each of the Parties' arguments, whether discussed in this Order or not. In the interest of judicial economy, the Court limits its discussion to the issues and arguments necessary to resolve Defendants' Motion.

Even if a seizure occurs, it only violates the Fourth Amendment if it was unreasonable. United States v. Shrum, 908 F.3d 1219, 1230 (10th Cir. 2018) ("Of course, not every seizure at the hands of government officials violates the Fourth Amendment. Only unreasonable seizures are proscribed."). Within the school setting, officials do not need probable cause to seize a student. Couture, 535 F.3d at 1250. Rather, "[t]o balance the students' privacy rights with the 'schools' custodial and tutelary responsibility for children,' a seizure need only be 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" Id. (quoting Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls, 536 U.S. 822, 828-29 (2002)). The question is whether a constitutional violation occurred, not whether actions "comported with proper educational policy." Id. at 1251.

APS, the Alamogordo Board of Education, President Cadwallader, and Superintendent Crabtree cannot be held liable under a theory of respondeat superior. Iqbal, 556 U.S. at 676. However, a government body may be liable under Section 1983 if a custom or policy—including the failure to train or supervise employees—caused the plaintiff's injury. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010)).

Count I alleges that L.L. was seized in violation of her Fourth Amendment rights when Principal Boyle removed L.L. from the classroom and summoned her to the MVMS administrative office. Am. Compl. ¶¶ 204-05. Plaintiffs also allege that the APS Defendants established an official policy or custom of Fourth Amendment rights violations by "detaining students and releasing students to law enforcement officers when those students were not believed to have committed crimes[.]" Id. ¶ 237. They also vaguely allege that Superintendent Crabtree and

Principal Boyle failed to adequately train and supervise APS personnel on Fourth Amendment standards. Id. ¶ 239.

For the reasons that follow, the Court finds that Principal Boyle is entitled to qualified immunity because (1) no constitutional violation occurred and (2) even assuming an unreasonable seizure occurred, the specific right asserted was not clearly established. The Court further finds that because no constitutional violation occurred, the remaining APS Defendants cannot be held liable under a theory of official policy or custom, or for failure to train and supervise. Consequently, all Defendants are entitled to judgment on the pleadings as to Count I.

### 1.    Constitutional violation

As outlined above, whether school officials made an unlawful seizure is a two-step inquiry. Couture, 535 F.3d at 1250-51. The first step is to determine whether a reasonable person would have believed he was not free to leave. Id. at 1250. Because students are not generally free to leave school, to qualify as a seizure "the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." Id. at 1250-51. If the student was seized, the second step is to determine whether the seizure was reasonable—i.e., whether it was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 1250.

As to step one, the Court finds that no seizure occurred. The Amended Complaint alleges that Principal Boyle "seized L.L. by requiring that L.L. leave her MVMS classroom and report to the MVMS Office." Am. Compl. ¶ 205. Plaintiffs' facts indicate this was not wholly out of the ordinary since L.L. thought Ms. Hubbard might be taking her out of school for an appointment. Id. ¶ 83. Regardless, the Court finds that even when construing the Amended Complaint in the light most favorable to Plaintiffs, summoning L.L. to the school office did not significantly exceed

the inherent limitations on movement experienced by L.L. in every-day, compulsory attendance. As such, it was not a Fourth Amendment seizure. See Couture, 535 F.3d at 1250-51.

As to step two, even if this were a seizure, summoning L.L. to the office was reasonable because it was justified at inception and reasonably related in scope to the circumstances which justified the interference in the first place. L.L.'s removal from class was justified at inception because school officials were investigating whether the Male Student was repeatedly engaging in "criminal sexual contact" at school events and/or on school property, and whether L.L. and the other girls were victims of or witnesses to that conduct. See id. ¶¶ 24, 30, 34-36, 44, 60, 76, 93, 142. Indeed, Plaintiffs appear to concede the Female Student's allegations merited Principal Boyle contacting APD. Resp. at 23 ("Plaintiffs do not fault Principal Boyle for contacting the APD to report the Allegations made by" L.L. and her father). The removal from class was reasonably related in scope because it lasted less than forty minutes, including transportation to and from Kids, Inc., resulting in a minimal disturbance in the school day. Id. ¶¶ 82, 95. Moreover, the interview itself was confined to the allegations about the Male Student's interaction with L.L. and the other girls. Id. ¶¶ 93-94.

Because no seizure occurred, and even if a seizure occurred it was reasonable, summoning L.L. from the classroom to the MVMS office did not violate L.L.'s Fourth Amendment rights.[8]

---

[8] The Court rejects Plaintiffs' reliance on Pacheco v. Hopmeier, 770 F. Supp. 2d 1174 (D.N.M. 2011), as authority supporting a finding that an unreasonable seizure occurred in this case. See Resp. at 5-6. In Pacheco, a police officer went to a high school and told the principal that (1) a sixteen-year-old student, plaintiff Pacheco, may have witnessed, but was not suspected of, a crime, and (2) he wanted to take him to the police station for questioning. 770 F. Supp. 2d at 1179. The principal believed that Pacheco's mother had consented to Pacheco's removal from school and ordered the school nurse to retrieve Pacheco from class by falsely telling him they needed to check his immunization records. Id. at 1179-80. After the nurse escorted Pacheco from his classroom the police officer confronted him and asked him for his cell phone. Id. at 1180. Pacheco believed the officer just wanted to borrow the phone temporarily and handed it over, but instead the officer confiscated the phone. Id. at 1180. The officer then told Pacheco "that he had no choice and had to accompany [the officer] to the police station for questioning. [Pacheco] refused, insisting that he did not want to go. All parties agree that [Pacheco] made clear that he did not consent to being taken to the station." Id. Because Pacheco refused to go to the police station, two officers twisted his arms

## 2.    Clearly Established

Even if Principal Boyle violated L.L.'s Fourth Amendment right against unlawful seizure, Principal Boyle is still entitled to qualified immunity because Plaintiffs fail to show L.L.'s right was clearly established at the time of the complained-of conduct.  See Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015) (explaining that a plaintiff may satisfy her burden of establishing that a right is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains'" (quoting Weise v. Casper, 593 F.3d 1163, 1167 (10th Cir. 2010))).

Plaintiffs rely on Jones v. Hunt, 410 F.3d 1221 (10th Cir. 2005), Hall v. Burke, 12 F. App'x 856 (10th Cir. 2001), Pacheco v. Hopmeier, 770 F. Supp. 2d 1174 (D.N.M. 2011), and Smith v. Kenny, 678 F. Supp. 2d 1124 (D.N.M. 2009) as clearly establishing L.L.'s right against unlawful seizure.  Resp. at 7-8.

To begin with, Pacheco and Smith cannot "clearly establish" a constitutional right for purposes of the qualified immunity analysis because they are not decisions from the U.S. Supreme Court or Tenth Circuit Court of Appeals.  Crane v. Utah Dep't of Corrs., 15 F.4th 1296, 1306 (10th Cir. 2021) ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes.").

---

behind his back and handcuffed him.  Id.  "While being handcuffed, Zachery cried and repeated that he did not want to go anywhere with [the officer]."  Id.  The principal allegedly then ordered a school security guard to search the handcuffed Pacheco without reasonable suspicion.  Id.  The officer then transported Pacheco against his will to the police station.  Id.  Thereafter, Pacheco sued the principal and the school board for Fourth and Fourteenth Amendment violations.  Id. at 1180-81.  The court granted Pacheco summary judgment on the Fourth Amendment seizure claim.  Id. at 1181-88.

     The facts alleged in this case are nothing like the facts in Pacheco.  L.L. was not physically restrained; she did not refuse to go with Officer Ramirez; she was not taken to a police station; and her belongings were not confiscated.  Pacheco is wholly distinguishable and does not support a finding that Principal Boyle unreasonably seized L.L. in this case.

Second, <u>Hall</u> cannot clearly establish a constitutional right because it is unpublished.  <u>Green v. Post</u>, 574 F.3d 1294, 1305 n.10 (10th Cir. 2009) ("In determining whether the law was clearly established, we have held that we may not rely upon unpublished decisions."); <u>Mecham v. Frazier</u>, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion, . . . even if the facts were closer, provides little support for the notion that the law is clearly established . . . .").

Finally, <u>Jones</u> is not sufficiently on point to clearly establish the asserted right because it does not involve (1) a school official (2) removing a student from class (3) to investigate potential student-on-student crimes.  In <u>Jones</u>, a sixteen-year-old girl was living with her father when he committed an act of violence against her.  410 F.3d at 1223-24.  The girl moved in with her mother who obtained a protective order ("TRO") on the girl's behalf.  <u>Id.</u> at 1224.  The TRO prohibited the father from having contact with the girl until further court order.  <u>Id.</u>

The day he received the TRO, the father (a former police officer) and his new wife (a friend of the county sheriff) met with a deputy sheriff for assistance.  <u>Id.</u>  The deputy sheriff left the meeting and took a social worker to the high school with him.  <u>Id.</u>  "The two officials confronted [the girl] and told her, contrary to the terms of the TRO, that she could not live with her mother. They insisted that she either choose to live with her father, again in contravention of the TRO, or move into a shelter."  <u>Id.</u>  The deputy sheriff and social worker left the school but returned a short time later to find the girl in a counselor's office.  <u>Id.</u>

> The counselor then left, and the two officials—[the sheriff's deputy] in uniform—proceeded to tell [the girl] for an additional "hour or two" that if she did not return to her father's house, [the sheriff's deputy] would arrest her, that her "life would be hell," that [the sheriff's deputy] and [the social worker] would "be [her] shadow until [she was] eighteen, and maybe longer," that they would ensure that her mother was sent to prison, that there was a "zero percent" chance that she would live with her mother, and that when she turned eighteen, she and her mother might be "cell mates." [The girl] cried throughout the encounter, and alleged that she was

16

"terrified of [the sheriff's deputy] and [the social worker]" and "did not even think of challenging" them.

Id.  The Tenth Circuit concluded that the sheriff's deputy and social worker's "threats and demands" transformed what may have initially been a consensual encounter into a seizure.  Id. at 1227.

The Tenth Circuit further found that the seizure was unreasonable; that is, the seizure was not "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 1228-29 (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).  The court explained:

> The complaint does not allege that [the social worker] suspected [the girl's] mother of abusive or neglectful behavior.  On the other hand, there was sufficient evidence of her father's abusiveness to both warrant transfer from his custody (which [the social worker] himself facilitated two months earlier) and the issuance of a TRO against him. Indeed, [the social worker's] demand that [the girl] leave her mother's care and enter her father's custody violated the express terms of the existing TRO. We do not see how a seizure, the alleged intended purpose of which would violate a court order, can possibly be justified at its inception. There was no legitimate governmental interest in this seizure. See Wyoming v. Houghton, 526 U.S. 295, 299–300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (we may "evaluate the search or seizure under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."). Where no legitimate basis exists for detaining a child, a seizure is plainly unreasonable. Taking the alleged facts as true, this seizure, which lasted between three to four hours, was unjustified from the beginning, and therefore cannot be said to be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S.Ct. 1868. Even when scrutinized under the minimal requirements of Terry, [the social worker's] alleged conduct amounts to an unreasonable seizure.

Id. at 1228-29 (footnotes omitted).  Finally, the Tenth Circuit found that the social worker was not entitled to qualified immunity because it was clearly established by January 2003 when the seizure occurred "that a seizure must be reasonable" and that "the Fourth Amendment's strictures apply to social workers."  Id. at 1229 (citations omitted).

This case is nothing like <u>Jones</u>. Even construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege that Principal Boyle made "threats" or "demands" to L.L. It simply alleges that "[a]t approximately 1:20 P.M. on November 4, 2024, Principal Boyle or other APS Personnel, summoned L.L. to the MVMS Office[,]" Am. Compl. ¶ 82, and that when she "arrived at the MVMS Office, she was approached by Officer Ramirez who told L.L. that he 'had to take her' to be questioned or to answer some questions[,]" <u>id.</u> ¶ 86. Officer Ramirez then took her to a "safehouse" where someone interviewed her about her and her friends' interactions with the Male Student, and then immediately returned her to school. <u>Id.</u> ¶¶ 91, 93, 95, 218. <u>Jones</u> does not clearly establish that such conduct results in a seizure for Fourth Amendment purposes.

Therefore, the Court finds that Principal Boyle is entitled to qualified immunity as to Count I because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a Fourth Amendment violation and (2) Plaintiffs failed to carry their burden of establishing that, if an unlawful seizure occurred, the right asserted was clearly established at the time of the conduct. The Court further finds that because no constitutional violation occurred,[9] Count I fails to state a claim against the Board of Education, President Cadwallader, and Superintendent Crabtree for policy or custom liability, or for failure to train and supervise.[10, 11]

---

[9]     In its contemporaneously-filed Order granting the APD Defendants' Motion for Judgment on the Pleadings and for Qualified Immunity, the Court finds that the Amended Complaint fails to plausibly allege that the APD Defendants unreasonably seized L.L.

[10]     This finding applies equally to APS to the extent Plaintiffs intended to name APS in Count I.

[11]     Even if there were an underlying rights violation, the Board, APS, and the supervisory APS Defendants would be entitled to judgment on the pleadings as to Count I. Because APS is a public school system, principles of municipal liability apply. <u>Brammer-Hoelter v. Twin Peaks Charter Acad.</u>, 602 F.3d 1175, 1188 (10th Cir. 2010). The Board and APS "cannot be held liable for the acts of its employees on a theory of <u>respondeat superior</u>." <u>Id.</u> Rather, to establish municipal liability under Section 1983 a plaintiff must plausibly allege (and ultimately demonstrate) "(i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged." <u>Herrera v. Santa Fe Pub. Schs.</u>, 41 F. Supp. 3d 1188, 1252 (D.N.M. 2014) (citing <u>Graves v. Thomas</u>, 450 F.3d 1215, 1218 (10th Cir. 2006)).

<hr />

Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability may be also based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. See Pembaur, 475 U.S. at 480–81, 106 S.Ct. 1292; Praprotnik, 485 U.S. at 123–27, 108 S.Ct. 915. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused. City of Canton v. Harris, 489 U.S. 378, 388–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Brammer-Hoelter, 602 F.3d at 1189.

First, Plaintiffs do not plausibly allege a formal policy caused the injury. To the contrary, Plaintiffs allege that APS has formal policies in place to prevent the kind of injury allegedly suffered by L.L., and that Principal Boyle's conduct violated those policies. Am. Compl. ¶¶ 185-86, 189-90.

Second, Plaintiffs do not allege any facts indicating a widespread "custom" of interviewing students off-campus without notifying guardians alleged in the Complaint.

Third, Principal Boyle is not an authorized policymaker for the supervisory Defendants. Whether "a particular official has 'final policymaking authority' is a question of state law." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (citation omitted). The Tenth Circuit has identified

> three elements that help determine whether an individual is a "final policymaker": (1) whether the official is meaningfully constrained "by policies not of that official's own making;" (2) whether the official's decision are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority.

Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995) (quoting Praprotnik, 485 U.S. at 127). Policymaking is not delegated if the "subordinate's decisions are constrained by policies not of his own making or when [his] decisions are subject to review by the authorized policymaker." Ware v. Unified Sch. Dist., 902 F.2d 815, 818 (10th Cir. 1990). District Courts have looked to New Mexico statutes to help determine who qualifies as a policymaker. See Pahls v. Bd. of Cnty. Comm'rs for Cnty. of Bernalillo, No. CV 08-53-LH-ACT, 2010 WL 11590666, at *7 (D.N.M. June 23, 2010) (examining New Mexico statutes to determine whether a Lieutenant in the Bernalillo County Sheriff's Department was a policymaker).

As to the first element, Plaintiffs' facts show that Principal Boyle was constrained by APS Policies J-6500 and J-3400, neither of which is a policy she made. Am. Compl. ¶¶ 185, 189, 191. As to the second element, Principal Boyle is subject to meaningful review per state law. Pursuant to N.M. Stat. Ann. § 22-10A-18A, New Mexico principals are "under the general supervision of the local superintendent." Furthermore, local school boards, local superintendents, and principals are all subject to the authority of the New Mexico Public Education Department and Commission, which may suspend them if it has sufficient reason to believe the education process has been impaired or halted because of deficiencies. N.M. Stat. Ann. § 22-10A-14E. Finally, as to the third element, Plaintiffs' themselves allege that Principal Boyle's decision to remove L.L. from class and facilitate her interview was not within the realm of her official authority. Am. Compl. ¶¶ 186, 190. And principals in New Mexico must "perform other duties assigned to [them] by the local superintendent to implement the policies of the local school board." N.M. Stat. Ann. § 22-10A-18F (emphasis added). Principal Boyle is not a policymaker on behalf of the supervisory APS Defendants.

Finally, the Amended Complaint fails to plausibly allege that the supervisory APS Defendants failed to adequately train or supervise. The allegations on these points are vague and conclusory, unsupported, and,

See Trigalet v. City of Tulsa, 239 F.3d 1150, 1150-51 1154-56 (10th Cir. 2001) (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases). Consequently, Defendants are entitled to judgment on the pleadings as to Count I.

### b. Count III: Fourteenth Amendment substantive and procedural due process

"The Supreme Court has recognized that parents have a fundamental right to determine 'the care, custody, and control of their children.'" Lee v. Poudre Sch. Dist. R-1, 135 F.4th 924, 933 (10th Cir. 2025) (quoting Troxel v. Granville, 530 U.S. 57, 66 (2000)). The "familial right of association" is a substantive due process right guaranteed by the Fourteenth Amendment.[12] See Halley v. Huckaby, 902 F.3d 1136, 1153 (10th Cir. 2018) (citing Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993)).

"'In procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" Moore v. Bd. of Cnty. Comm'rs, 507 F.3d 1257, 1259 (10th Cir. 2007) (alteration in original) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

Count III alleges that Principal Boyle and, by extension, the other APS Defendants violated Nancy Hubbard's Fourteenth Amendment substantive and procedural due process rights when they "exercised control over, detained, and seized L.L. by requiring that L.L. leave her MVMS

---

consequently, not well-pleaded. See Am. Compl. ¶ 233 ("Principal Boyle's actions, including . . . failure to properly train and supervise APS Personnel, were grossly negligent, willful, wanton, and egregious."); id. ¶ 239 ("Superintendent Crabtree and Principal Boyle participated in the constitutional violation, and failed to adequately and appropriate train and supervise APS Personnel on Fourth Amendment standards."); id. ¶ 240 ("The Defendant, District, through its Superintendent Crabtree and Principal Boyle, failed to properly train and supervise APS Personnel on Fourth Amendment standards and mandates applicable to the circumstances presented herein . . . ."). They are therefore not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

[12]    The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

classroom and report to the MVMS Office, and by transferring custody of L.L. to Officer Ramirez and APD" without first providing Ms. Hubbard notice and an opportunity to be heard.  Am. Compl. ¶¶ 284-85, 294.  It further alleges that the Alamogordo Board of Education, President Cadwallader, and Superintendent Crabtree violated Ms. Hubbard's substantive and procedural due process rights when they

> adopted and/or acted pursuant to an official policy, practice, and custom by which it/they permitted, allowed, and engaged in arresting APS students by detaining students and releasing students to law enforcement officers when those students were not believed to have committed crimes . . . , without providing notice to or an opportunity to be heard by the parents of the students.

Id. ¶ 300.  It also alleges that Superintendent Crabtree and Principal Boyle failed to supervise and train APS personnel on Fourteenth Amendment standards.  Id. ¶ 302.

For the reasons that follow, the Court finds that Principal Boyle is entitled to qualified immunity because (1) no Fourteenth Amendment violation occurred, and (2) even assuming a due process violation occurred, the specific rights asserted were not clearly established at the time of the conduct.  The Court further finds that because no constitutional violation occurred, the other APS Defendants are entitled to judgment on the pleadings as to Count III.

### 1.     Substantive Due Process

#### A.     Constitutional violation

Alleged violations of the familial right to association are subject to a "shocks-the-conscience" standard.  Halley, 902 F.3d at 1154-55.  When a plaintiff asserts that a government official has interfered with the plaintiff's Fourteenth Amendment right of familial association, "it shocks the conscience when: (1) the officials intended to deprive the plaintiff of a protected relationship with a family member, and (2) the officials' intrusion into the relationship was not warranted by state interests in the health and safety of the family member."  Id. 1154 (citing

Thomas, 765 F.3d at 1196). "Together, the facts alleged by the plaintiff on these points must meet the shocks-the-conscience standard." Id. at 1154-55. To satisfy this standard, the officials must have "'unduly burdened' that relationship in a manner that was 'egregious,' 'outrageous,' 'unrestrained,' 'brutal,' and a display of arbitrary power being used 'as an instrument of oppression.'" Woodard, 912 F.3d at 1301. The Amended Complaint fails to plausibly allege such conduct.

First, the Court finds that the Amended Complaint fails to plausibly allege that Defendants intended to deprive Ms. Hubbard of her relationship with L.L., through conscience-shocking conduct or otherwise. In this regard, the Amended Complaint alleges that Defendants interfered with Ms. Hubbard's relationship with L.L. when they "exercised control over, detained, and seized L.L. by requiring that L.L. leave her MVMS classroom and report to the MVMS Office, and by transferring custody of L.L. to Officer Ramirez and APD." Am. Compl. ¶ 284. Although Count III contains the conclusory allegation that Principal Boyle's actions "shock the conscience" and "demonstrate her intentional, deliberate, reckless, and callous disregard for and gross indifference of the rights of Ms. Hubbard and the known risks of serious harm to Ms. Hubbard[,]" id. ¶ 296, unsupported conclusory allegations and legal conclusions masquerading as facts are not entitled to the assumption of truth, Iqbal, 556 U.S. at 679.

The only well-pleaded allegations concerning Principal Boyle's decision to remove L.L. from class reflect that she was assisting Officer Ramirez's investigation into whether L.L. was a victim of or witness to "criminal sexual contact" by the Male Student. Id. ¶¶ 24-30, 33-39, 41, 44, 46, 60, 65, 68-69, 82, 86, 91, 93-94. None of the well-pleaded allegations permit a plausible inference that Principal Boyle (or any other Defendant) engaged in conscience-shocking conduct intending to deprive Ms. Hubbard of her relationship with L.L. See Woodard, 912 F.3d at 1302

22

(finding that even if the complaint could be construed as alleging that a case worker who performed a visual examination of a child for signs of abuse and photographed the child intended to interfere with the mother's familial association with the child, it failed to allege a conscience-shocking interference because "the complaint lacked allegations that [the social worker's] motivation was anything other than to investigate potential child abuse").

Second, even if the Amended Complaint plausibly alleged that the APS Defendants intended to interfere with Ms. Hubbard's relationship with L.L., it does not plausibly allege that Defendants "'unduly burdened' or created an 'unwarranted intrusion' on the plaintiff's right to familial association." Halley, 902 F.3d at 1155. To determine whether Defendants unduly burdened or created an unwarranted intrusion on Ms. Hubbard's right to familial association, the Court balances Ms. Hubbard's interest in her protected relationship with L.L. with the state's interest in L.L.'s safety. Id. at 1153-54; Griffin, 983 F.2d at 1547. Plaintiffs do not plausibly allege that Principal Boyle's actions affected Ms. Hubbard's custody rights or relationship with L.L. in any way; in fact, Ms. Hubbard did not even know L.L. was removed from class until Officer Ramirez informed her about it the next day. Id. ¶¶ 142-43. Moreover, Principal Boyle had a substantial interest in removing L.L. from class for the interview at Kids, Inc. Specifically, Defendants were investigating whether the Male Student was repeatedly engaging in "criminal sexual contact" with female students, and whether L.L. and the other girls were victims of or witnesses to that conduct. See id. ¶ 142 (Officer Ramirez describing the allegations against the Male Student's as "constantly . . . touching the girls and even as far as the word 'rape' was used"); see also id. ¶¶ 24, 30, 34-36, 44, 60, 76, 93. Significantly, the alleged acts occurred at school—one at a school dance and the other on a school bus. Id. ¶¶ 24, 36. On balance, the intrusion or burden, if there was one, was not undue nor unwarranted.

23

Moreover, the alleged interference occurred during school hours when Ms. Hubbard would not otherwise have been with L.L. "To the extent [L.L.] was separated from [Ms. Hubbard] during a time when she would have wanted [Ms. Hubbard] to be present, this is a far cry from the substantial separation required in other cases." Woodard, 912 F.3d at 1302 (citing Thomas, 765 F.3d at 1188-90, 1197-98 (finding that the complaint stated a Fourteenth Amendment claim where the plaintiff's daughter was allegedly separated coercively for weeks in a mental health ward); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1238-39, 1246 (10th Cir. 2003) (finding that the complaint stated a Fourteenth Amendment claim where the child was removed from the home and placed under protective care for a week)). For these reasons, the Court finds that the Amended Complaint fails to state a Fourteenth Amendment substantive due process claim against Principal Boyle for violating Ms. Hubbard's right of familial association with L.L. See id.

**B.    Clearly established**

Even if Principal Boyle violated Ms. Hubbard's substantive due process right of familial association, Plaintiffs failed to carry their burden of establishing that the right was "clearly established." See Quinn, 780 F.3d at 1005.

Plaintiffs cite no case from the U.S. Supreme Court or Tenth Circuit Court of Appeals that clearly establishes the right asserted. And although they cite one case from the Seventh Circuit, Doe v. Heck, 327 F.3d 492 (7th Cir. 2003), Resp. at 15, a single out-of-circuit case does not qualify as a "robust consensus of cases of persuasive authority" that clearly establishes a right.[13] District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted).

---

[13]    Plaintiffs also cite a litany of other cases in their Response, but Plaintiffs do not assert those cases establish Ms. Hubbard's substantive due process right. See Resp. at 15-19. Rather these cases stand for various general standards relating to familial rights and substantive due process. See Roska, 328 F.3d at 1245 ("Children have a constitutionally-protected liberty interest in a relationship with their parents, and vice versa."); Halley, 902 F.3d at 1145 ("[F]amilial right of association is a substantive due process right"); Woodard, 912 F.3d 1278, 1301 ("[A]

Even if a single out-of-circuit case could clearly establish a constitutional right, Heck is not sufficiently on point to clearly establish the right asserted. Plaintiffs argue that Heck stands for the principle that "removal of [a] child from class and questioning by [a] social worker violate[s] [the] parents' substantive due process rights[.]"  Resp. at 15.  This case is off-point and unpersuasive.

In Heck, social workers were investigating allegations of private school officials using corporal punishment to discipline students.  327 F.3d at 502.  The court found the social workers' investigation and interviews with a child about corporal punishment without his parents' consent violated the student's and parents' rights to familial relations because (1) parents who believe in corporal punishment have a right to delegate corporal punishment to private school administrators, and (2) government officials threatened explicitly to take custody of their son. Id. at 523-24. That is, state officials—not school officials—placed themselves purposefully between parents and their child and then threatened to remove the child from his home.  See id.  Here, the actor is a school official investigating circumstances that have nothing to do with the parent-child relationship, much less Ms. Hubbard's right to the care, custody, and control of L.L.  See Am. Compl. ¶¶ 37, 39, 91, 93-94, ECF No. 14.  Thus, Heck does not clearly establish the right asserted.

The Court observes that under similar circumstances as those here, the Tenth Circuit in Halley held that the child's substantive due process rights to familial association were not clearly established.  902 F.3d at 1156-57.  In that case, state officials received an anonymous call voicing concern for the safety of a six-year-old boy, alleging that his father used drugs and had a prior arrest record for possessing drugs and a firearm.  Id. at 1142.  Two days later, state officials picked

plaintiff must allege facts showing the defendant's intent to interfere with the plaintiff's liberty interest in familial association - that is, the defendant must have directed conduct at the familial relationship with knowledge that the statements or conduct will adversely affect the relationship.").  Therefore, the Court will not evaluate these cases.

the boy up from school and drove him to a safehouse for an interview. Id. at 1143. The interview lasted about forty minutes, after which an official transported the boy back to school. Id. The boy later sued the state officials alleging a violation of his Fourteenth Amendment substantive due process right to familial association. Id. at 1143, 1153. The district court denied the officials' motions for summary judgment on the basis of qualified immunity, and the officials appealed. Id. at 1143. On appeal, the Tenth Circuit declined to determine whether a constitutional violation occurred, concluding instead that "[e]ven if the officials did violate [the boy's] substantive due process rights, . . . the right was not clearly established, and so the defendants are entitled to qualified immunity." Id. at 1156. Specifically, it found that the boy "has not shown that reasonable officials would have known that the short seizure here would constitute an unwarranted interference with a family relationship[.]" Id.

Likewise, here, Ms. Hubbard has not shown that reasonable officials would have known that L.L.'s brief removal from class for a safehouse interview regarding whether she was a victim of or witness to student-on-student criminal sexual contact would constitute an unwarranted interference with the family relationship.

Therefore, the Court finds that Principal Boyle is entitled to qualified immunity as to Count III's substantive due process claim because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a constitutional violation and (2) Plaintiffs failed to carry their burden of establishing that even if a substantive due process violation occurred, the right asserted was clearly established at the time of the conduct. And because no constitutional violation occurred, the other APS Defendants are entitled to judgment on the pleadings as to Count

III's substantive due process claim.[14]  See Trigalet, 239 F.3d at 1150-51, 1154-56 (holding that

there can be no municipal liability where no underlying constitutional violation occurred, and

collecting cases).

### 2.    Procedural Due Process

#### A.    Constitutional violation

Procedural due process claims are examined in two steps: "the first asks whether there

exists a liberty or property interest which has been interfered with by the State; the second

examines whether the procedures attendant upon that deprivation were constitutionally

sufficient[.]"  Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted).  As

to the first question, "the interest of parents in the care, custody, and control of their children[]is

perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court."

Troxel, 530 U.S. at 65.  The Tenth Circuit has held that absent extraordinary circumstances

involving an imminent threat to the safety of a child, parents are entitled to notice and a hearing

before the state may remove a child from their custody.  Roska, 328 F.3d at 1245.

Here, the Court finds that even when construed in the light most favorable to Plaintiffs, the

Amended Complaint does not plausibly allege that Defendants removed L.L. from Ms. Hubbard's

custody.  See supra Section IV(b)(1)(A).  Rather, it alleges that Principal Boyle removed L.L. from

class for a brief interview at a safehouse regarding whether she was a victim of or witness to

---

[14]    Even if there were an underlying rights violation, the Board, APS, and the supervisory APS
Defendants would be entitled to judgment on the pleadings as to the substantive due process claim because APS
promulgated no policy or custom that caused the violation under the facts alleged, Principal Boyle is not a final policy
maker for the supervisory APS Defendants, and the Amended Complaint fails to plausibly allege that the supervisory
APS Defendants' failure to adequately train or supervise caused Ms. Hubbard's injury.  See Note 11, supra.  As with
Count I, the allegations regarding failure to train and supervise are vague and conclusory, unsupported, and,
consequently, not well-pleaded.  See Am. Compl. ¶ 296 ("Principal Boyle's actions, including . . . failure to properly
train and supervise APS staff, were grossly negligent, willful, wanton, and egregious"); id. ¶ 302 ("Superintendent
Crabtree and Principal Boyle failed to adequately and appropriate train and supervise APS personnel on Fourteenth
Amendment standards.").  They are therefore not entitled to the assumption of truth.  Iqbal, 556 U.S. at 679.

"criminal sexual contact" by the Male Student, after which she was immediately returned to school.  Am. Compl. ¶¶ 24-30, 33-39, 41, 44, 46, 60, 65, 68-69, 82, 86, 91, 93-94.  Plaintiffs cite no authority holding that this affected Ms. Hubbard's custody or familial association rights.  Cf. Woodard, 912 F.3d at 1302 (observing that the search of the plaintiff's daughter that allegedly violated the plaintiff's due process right to familial association occurred "during school hours when [the child's] mother would not otherwise have been with her" and "[t]o the extent the child was separated from her mother during a time when she would have wanted her mother to be present, this is a far cry from the substantial separation required in other cases").

Because Defendants did not remove L.L. from Ms. Hubbard's custody, the Court finds that they did not violate her procedural due process rights.  See Dees v. County of San Diego, 960 F.3d 1145, 1153 (9th Cir. 2020) (holding that social worker's alleged seizure and interview of child at school did not implicate the parents' Fourteenth Amendment due process right to familial association because the parents did not allege that they "actually lost" custody of the child).

## B.    Clearly established

Even if Principal Boyle violated Ms. Hubbard's procedural due process right, Principal Boyle is still entitled to qualified immunity because Plaintiffs fail to show Ms. Hubbard's right was clearly established at the time of the complained-of conduct. In their Response, Plaintiffs argue that the Tenth Circuit's jurisprudence clearly establishes that "except in extraordinary circumstances, a parent has a constitutionally-protected liberty interest in familiar [sic] association and privacy that cannot be violated without adequate pre-deprivation procedures."  ECF No. 63 at 20 (citing Roska, 328 F.3d at 1250); see also id. 20-21 (citing Smith v. Org. of Foster Fams. for Equal. & Reform, 431 U.S. 816, 848 (1977); Lowther, 101 F.4th at 770; Gomes v. Wood, 451 F.3d

1122, 1129 (10th Cir. 2006); Silvan v. Briggs, 309 F. App'x 216 (10th Cir. 2009)).  None of the cited cases are on point.

Rather, each of these cases is about the removal of children from their guardians' physical custody by the state.  Smith was about the right of foster parents to notice and a hearing before removal of foster children from foster homes.  431 U.S. at 818-20.  In Lowther, children were removed from their parents' custody by government officials based on accusations their father was abusing them.  101 F.4th at 748-53.  Similarly, in Roska, the plaintiff's child was removed from his home by government officials because the officials believed the plaintiff was harming the child; because the child was not in imminent harm, the court found the plaintiff had a right to notice and hearing prior to removal.  328 F.3d at 1246.  Likewise, in Gomes, a social worker removed a nine-month-old from her home and placed her in protective custody on a belief that the child's physical health and safety were in substantial danger.  451 F.3d at 1123-25. Finally, in Silvan state officials removed a child from her home after her brother-in-law raped her.   309 F. App'x at 219-20.

In Halley, the Tenth Circuit rejected the plaintiff's reliance on Roska and another custody removal case, Malik v. Arapahoe County Department of Social Services, 191 F.3d 1306 (10th Cir. 1999), on the grounds that those cases involved procedural due process claims, and the Halley plaintiff had alleged only a substantive due process claim.  902 F.3d at 1157.  However, the Tenth Circuit further opined that even if the Halley plaintiff had alleged a procedural due process violation, Roska and Malik "would not have established a violation of his rights" because Halley "did not involve a seizure from the child's home—much less a termination of parental rights. Rather, the officials . . . only took [the child] from school and interviewed him for less than an hour."  Id. at 1157.

29

For the same reason, the Court rejects Plaintiffs' reliance on <u>Smith</u>, <u>Lowther</u>, <u>Roska</u>, <u>Gomes</u>, and <u>Silvan</u>. As in <u>Halley</u>, Ms. Hubbard has not shown that reasonable officials would have known that Ms. Hubbard was entitled to notice and an opportunity to be heard before L.L.'s brief removal from class for a safehouse interview regarding whether she was a victim of or witness to student-on-student criminal sexual contact.

Therefore, the Court finds that Principal Boyle is entitled to qualified immunity as to Count III's procedural due process claim because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a constitutional violation and (2) Plaintiffs failed to carry their burden of establishing that even if a procedural due process violation occurred, the right asserted was clearly established at the time of the conduct. And because no constitutional violation occurred, Count III fails to state a procedural due process claim against the remaining APS Defendants.[15] <u>See</u> <u>Trigalet</u>, 239 F.3d at 1150-51, 1154-56 (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases holding that there can be no municipal or supervisory liability where no underlying constitutional violation occurred). As such, Defendants are entitled to judgment on the pleadings as to Count III.

---

[15]     Even if there were an underlying rights violation, the Board, APS, and the supervisory APS Defendants would be entitled to judgment on the pleadings as to the procedural due process claim because APS promulgated no policy or custom that caused the violation under the facts alleged, Principal Boyle is not a final policy maker for the supervisory APS Defendants, and the Amended Complaint fails to plausibly allege that the supervisory APS Defendants' failure to adequately train or supervise caused Ms. Hubbard's injury. <u>See</u> Note 11, <u>supra</u>. As previously discussed, <u>see</u> Notes 11 & 14, <u>supra</u>, the allegations regarding failure to train and supervise are vague and conclusory, unsupported, and ,consequently, not well-pleaded. <u>See</u> Am. Compl. ¶ 296 ("Principal Boyle's actions, including . . . failure to properly train and supervise APS staff, were grossly negligent, willful, wanton, and egregious"); <u>id.</u> ¶ 302 ("Superintendent Crabtree and Principal Boyle failed to adequately and appropriate train and supervise APS personnel on Fourteenth Amendment standards."). They are therefore not entitled to the assumption of truth. <u>Iqbal</u>, 556 U.S. at 679.

C.      New Mexico State Law Claims

Having found that the APS Defendants are entitled to judgment on the pleadings as to all federal claims asserted against them, and having found that the APD Defendants are entitled to judgment on the pleadings as to all federal claims asserted against them in a separate, contemporaneously filed Order, all that remains are Plaintiffs' state law claims under the New Mexico Civil Rights Act, N.M. Stat. Ann. §§ 41-4A-1 to -13 (2021).  Am. Compl. ¶¶ 255-80, 317-28, ECF No. 14.  Both claims require interpretation of the New Mexico constitution and the New Mexico Civil Rights Act better left to New Mexico state courts.

Title 42, United States Code, section 1367 provides that when all claims over which this Court has original jurisdiction have been dismissed, the Court may "decline to exercise supplemental jurisdiction[.]"  28 U.S.C. § 1367(c).  While the language of § 1367(c) is discretionary, the Tenth Circuit has indicated that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011) (emphasis added) (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)); see also Bauchman ex rel. Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (quotation marks and citation omitted)).  The Supreme Court has further advised that, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  "The Court finds this admonition particularly relevant here because the New Mexico state appellate courts have not yet had the opportunity to fully address

and interpret the provisions of the NMCRA, which was enacted only four years ago." <u>Trujillo v.</u> <u>City of Albuquerque</u>, 756 F. Supp. 3d 1200, 1216 (D.N.M. 2024). "Because the remaining claims under the NMCRA . . . would require the Court to unnecessarily make decisions of state law, the Court will not exercise supplemental jurisdiction over these claims." <u>Id.</u>

## V.    Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1. Defendants Alamogordo Public School District, Alamogordo Board of Education, Angela Cadwallader, Michael Crabtree, and Laigha Boyle's Motion for Judgment on the Pleadings and for Qualified Immunity, ECF No. 47, is **GRANTED**;

2. Alamogordo Public School District, Alamogordo Board of Education, Angela Cadwallader, Michael Crabtree, and Laigha Boyle are entitled to **JUDGMENT** as to Counts I and III of the Amended Complaint; and

3. Counts II and IV are **DISMISSED WITHOUT PREJUDICE.**

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE