**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

L.L., <u>by and through next friend</u>
Nancy Hubbard, <u>et al.</u>,

      Plaintiffs,

v.

                                     Case No. 2:25-cv-00471-MIS-KRS

ALAMOGORDO POLICE
DEPARTMENT, <u>et al.</u>,

      Defendants.

## <u>ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR QUALIFIED IMMUNITY, DISMISSING WITHOUT PREJUDICE STATE LAW CLAIMS, AND CLOSING CASE</u>

THIS MATTER is before the Court on Defendants the City of Alamogordo, David Kunihiro, and Aaron Ramierz's ("Defendants") Motion for Judgment on the Pleadings and for Qualified Immunity ("Motion"), ECF No. 50, filed August 31, 2025.[1]  Plaintiffs L.L. (a minor), Nancy Hubbard, and Raymond Laner ("Plaintiffs") filed a Response on September 12, 2025 ("Response"), ECF No. 61, to which Defendants filed a Reply on September 26, 2025 ("Reply"), ECF No. 76.  Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Motion, issue judgment on the pleadings as to the federal law claims (Counts I, III, and V), dismiss without prejudice the state law claims (Counts II, IV, VI, and VII), and close the case.

---

[1]      The Motion was also filed by former Defendant the Alamogordo Police Department ("APD"). However, the Court previously dismissed the claims asserted against APD.  <u>See</u> ECF No. 93.  Another group of Defendants that includes the Alamogordo Public School District ("APS Defendants") filed a separate Motion for Judgment on the Pleadings. ECF No. 47.  To avoid confusion, this Order does not include APD or the APS Defendants in its definition of "Defendants."

I.      **Background**[2]

On November 3, 2024, a female student ("Female Student") at Mountain View Middle School ("MVMS") reported that a male student ("Male Student") had touched her inappropriately at a school dance.  Am. Compl. ¶ 24, ECF No. 14.  The next day, the school contacted the Alamogordo Police Department ("APD") to report the incident, and Defendant Officer Aaron Ramriez ("Officer Ramirez") reported to the school to investigate "criminal sexual contact."  Id. ¶¶ 26-27, 30.  Officer Ramirez interviewed the Female Student in the presence of MVMS's principal, Defendant Laigha Boyle ("Principal Boyle"), an unidentified male believed to be an MVMS security guard, and the Female Student's father.  Id. ¶ 33.  During the interview, the Female Student indicated that other MVMS students, including Plaintiff L.L., may have witnessed the incident, may have information regarding other incidents involving the Male Student, and/or may have been "victims of inappropriate or illegal behavior or actions of the Male Student."  Id. ¶¶ 35, 44.  Additionally, the Female Student's father stated that the Male Student "had touched a girl under her skirt the past school year and had raped another of" the Female Student's friends.  Id. ¶ 34.

Later that day, MVMS personnel contacted the New Mexico Children, Youth and Families Department ("CYFD") to provide information from the Female Student's interview and information about the Male Student.  Id. ¶ 46.  CYFD generated an Intake Report ("CPS Report") identifying L.L. as the "Alleged Victim" and Plaintiff Nancy Hubbard—who is L.L.'s grandmother and legal guardian—as the "Alleged Perpetrator," coding the allegation as "Physical Neglect," and describing the allegation as "Lack of Supervision/Caretaker."  Id. ¶ 48; see also CPS Report, ECF

---

[2]       The Court accepts the truth of all well-pleaded factual allegations in Plaintiffs' Amended Complaint and draws all reasonable inferences in Plaintiffs' favor for purposes of Defendants' Motion.

No. 60-1.[3]  However, the "Narrative" section of the CPS Report only discusses the allegations of inappropriate sexual contact by the Male Student; it says nothing about any alleged neglect of L.L. by Ms. Hubbard.  See ECF No. 60-1 at 13-14.  A CYFD supervisor decided not to initiate an investigation into this report due to "[n]o specific allegations or insufficient information of child abuse/neglect/exploitation."  Am. Compl. ¶ 49; see also id. ¶ 52.  Regardless, CYFD provided the information included in the Intake Report to APD "for the purposes of compliance with NMSA 1978, §32A-4-3[4] and to advise APD of the alleged, delinquent behavior of the Male Student."  Id. ¶¶ 54-55.

Also on November 4, 2024, after interviewing the Female Student, Officer Ramirez contacted his supervisor, APD Chief of Police, Defendant David Kunihiro ("Chief Kunihiro"), who instructed Officer Ramriez to set up "safehouse" interviews at an off-campus location—Kids, Inc.—for L.L. and other students who may have witnessed the incident (or similar incidents).  Id. ¶¶ 64-65, 68-69.  "Kids, Inc., is a child advocacy center serving Otero[]County and Lincoln

---

[3]       "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."  Atl. Richfield Co. v. Farm Cred. Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992)).  In evaluating a Rule 12(b)(6) motion, "[t]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted).  Here, the CPS Report is central to Plaintiffs' claims, and the Parties do not dispute its authenticity.  Plaintiffs filed the CPS Report under seal because it contains identifying information.

[4]       N.M. Stat. Ann. § 32A-4-3 (1978) governs the duty to disclose child abuse and child neglect.  It requires, inter alia, "[e]very person . . . who has information that is not privileged as a matter of law, who knows or has a reasonable suspicion that a child is an abused or a neglected child" to report it to a local law enforcement agency, the CYFD, or a tribal law enforcement or social services agency.  N.M. Stat. Ann. § 32A-4-3(A).  It also requires the recipient of the information to "take immediate steps to ensure prompt investigation of the report."  N.M. Stat. Ann. § 32A-4-3(C).  "The investigation shall ensure that immediate steps are taken to protect the health or welfare of the alleged abused or neglected child, as well as that of any other child under the same care who may be in danger of abuse or neglect."  Id.  "A local law enforcement officer trained in the investigation of child abuse and neglect is responsible for investigating reports of alleged child abuse or neglect at schools, daycare facilities or child care facilities."  Id.

County, New Mexico that collaborates with law enforcement agencies to conduct interviews of children." Id. ¶ 70.

Around 1:20 p.m., Principal Boyle summoned L.L. to the MVMS office. Id. ¶ 82. When she arrived at the office, Officer Ramirez "told L.L. that he 'had to take her' to be questioned or to answer some questions[,]" id. ¶ 86, but did not otherwise tell her why he was removing her from school, id. ¶ 87. Officer Ramirez told L.L. that she could take her backpack and belongings with her or leave them in the school office. Id. ¶ 88. L.L. chose to leave her belongings in the office. Id. Officer Ramirez escorted L.L. to his police car where he instructed her to get into the back seat. Id. ¶ 90. Officer Ramirez drove L.L. from MVMS to Kids, Inc. for an interview during which L.L. provided information regarding her own interactions with the Male Student and interactions she had witnessed involving the Male Student. Id. ¶¶ 69, 93. Officer Ramirez returned L.L. to MVMS at approximately 1:59 p.m. Id. ¶ 95.

The next day, November 5, 2024, Officer Ramirez went to L.L.'s home, where she lives with her brother, Ms. Hubbard, and L.L.'s uncle, Plaintiff Raymond "Alex" Laner. Id. ¶¶ 133-34. Officer Ramirez told Mr. Laner that he was there to follow up on a "CPS report that came in last night[.]" Id. ¶ 137. He then spoke to Ms. Hubbard on the phone, id. ¶¶ 139-52, stating:

> There was a CPS report that came in last night regarding an incident that happened sometime within this last year to now with her friends and a boy from school. There's allegations that this boy has been constantly, I guess, allegedly touching the girls and even as far as the word 'rape' was used, and we're just trying to find out exactly what is going on. Yesterday, I don't know if she told you she did get pulled from school for interviews.

Id. ¶ 142. After the call concluded, "he stated to Mr. Laner that he had to enter the residence to make sure that there was food, running water, and electricity. Officer Ramirez entered the Hubbard/Laner Home where he examined the main living room and kitchen areas." Id. ¶ 152.

## II.    Relevant Procedural Background

On May 30, 2025, Plaintiffs filed the operative Amended Complaint alleging civil rights violations against the Alamogordo Public School District ("APS"), Alamogordo Board of Education ("ABE"), APS's Superintendent Michael Crabtree, ABE's President Angela Cadwallader, and Principal Boyle (collectively, "APS Defendants"), as well as APD, Officer Ramirez, Chief Kunihiro, and the City of Alamogordo.  Id. ¶¶ 12-19.

On October 6, 2025, the Court dismissed the claims against APD and Chief Kunihiro in his official capacity because the claims asserted against APD and Chief Kunihiro in his official capacity are deemed to be asserted against the City of Alamogordo.  See ECF No. 93.  The following claims remain:

- Count I alleges a violation of L.L.'s right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures against Officer Ramirez and Chief Kunihiro in their individual capacities, the City of Alamogordo, and the APS Defendants, pursuant to 42 U.S.C. § 1983, id. ¶¶ 203-54;

- Count II alleges a violation of L.L.'s right under Article II, Section 10 of the New Mexico Constitution to be free from unreasonable seizures against the City of Alamogordo and the APS Defendants, pursuant to the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-3, id. ¶¶ 255-80;

- Count III alleges a violation of Ms. Hubbard's procedural and substantive due process rights to the care, custody, and control of L.L. under the Fourteenth Amendment to the United States Constitution against Officer Ramirez and Chief Kunihiro in their individual capacities, the City of Alamogordo, and the APS Defendants, pursuant to 42 U.S.C. § 1983, id. ¶¶ 281-316;

5

- Count IV alleges a violation of Ms. Hubbard's procedural and substantive due process rights to the care, custody, and society of L.L. under Article II, Section 18 of the New Mexico Constitution against the City of Alamogordo and the APS Defendants, pursuant to the NMCRA, id. ¶¶ 317-28;

- Count V alleges a violation of L.L., Ms. Hubbard, and Mr. Laner's Fourth Amendment right under the United States Constitution to be free from unreasonable searches against Officer Ramirez and Chief Kunihiro in their individual capacities, and the City of Alamogordo, pursuant to 42 U.S.C. § 1983, id. ¶¶ 329-61;

- Count VI alleges a violation of L.L., Ms. Hubbard, and Mr. Laner's right under Article II, Section 10 of the New Mexico Constitution to be free from unreasonable searches against the City of Alamogordo, pursuant to the NMCRA, id. ¶¶ 362-73; and

- Count VII alleges a claim under New Mexico state law for spoliation of evidence against Officer Ramirez and Chief Kunihiro in their individual capacities, and the City of Alamogordo, id. ¶¶ 374-86.

On August 31, 2025, Defendants filed the instant Motion for Judgment on the Pleadings and for Qualified Immunity. ECF No. 50. Plaintiffs filed a Response, ECF No. 61, to which Defendants filed a Reply, ECF No. 76.

Defendants have filed a separate Motion for Judgment on the Pleadings as to Supervisory and Municipal Liability, ECF No. 52, which is fully briefed, see ECF Nos. 62, 75. However, the Court need not reach that Motion in light of the findings and conclusions made herein.

The APS Defendants have filed a separate Motion for Judgment on the Pleadings, see ECF No. 47, which is fully briefed, see ECF Nos. 63, 82. The Court grants that Motion by separate Order entered contemporaneously herewith.

Additional background information will be provided where relevant to the Court's analysis.

## III.    Legal Standards

### a.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."  Atl. Richfield Co. v. Farm Cred. Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992)).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal if a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully."  Id.  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice.  Twombly, 550 U.S. at 555.  Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible."  Brooks v. Mentor Worldwide LLC, 985 F.3d 1272, 1281 (10th Cir. 2021).

"To survive a motion for judgment on the pleadings based on qualified immunity, plaintiffs must allege sufficient facts that show—when taken as true—the defendant plausibly violated [their] constitutional rights, which were clearly established at the time of violation."  Hunt v. Montano, 39 F.4th 1270, 1278 (10th Cir. 2022) (alteration in original) (internal quotation marks

and citation omitted).  "Granting a motion for judgment on the pleadings is a final judgment on the merits."  Jorgensen v. Larsen, No. 90–4048, 1991 WL 55457, at *2 (10th Cir. Apr. 12, 1991) (unpublished) (citing 51 Wright & Miller's Federal Practice and Procedure § 1372 (1990)); see also Republic Steel Corp. v. Penn. Eng'g Corp., 785 F.2d 174, 177 n.2 (7th Cir. 1986) ("[A] motion under Rule 12(c) is directed towards a final judgment on the merits.").

### b.    Qualified Immunity

The doctrine of qualified immunity protects government officials sued in their individual capacity from liability for monetary damages unless their actions violate a "clearly established" statutory or constitutional right.  City of Escondido v. Emmons, 586 U.S. 38, 42 (2019) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)).  "Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'"  Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)).  The court may address these two inquiries in any order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019).  If the plaintiff fails to satisfy either part of the test, the court must grant qualified immunity.  McCowan, 945 F.3d at 1282 (quoting Est. of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019)).

A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it."  Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014).  "A plaintiff can demonstrate that a constitutional right is clearly established 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.'"  Gann

v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)).  "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority."  District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted).  Although the plaintiff is not required to identify a case "perfectly on-point[,]" Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015), "existing precedent must have placed the statutory or constitutional question beyond debate[,]" Kisela, 584 U.S. at 104 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).  Clearly established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case.  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987).  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Quinn, 780 F.3d at 1005 (quoting Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007)).  The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law.  See Creighton, 483 U.S. at 640.

    If a plaintiff shows that an official violated a clearly established right, the Court considers a third question: whether the official's actions were nevertheless objectively reasonable.  See Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003) (citing Creighton, 483 U.S. at 639).  The defendant bears the burden of proof on this question.  Id.  To prevail, the defendant must show that "extraordinary circumstances—such as reliance on the advice of counsel or on a statute—so prevented the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right."  Halley v. Huckaby, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting Shero v. City of Grove, 510 F.3d 1196, 1204 (10th Cir. 2007)); see also Roska, 328 F.3d at 1251.

### c. Municipal Liability

"A municipality is not directly liable for the constitutional torts of its employees." Finch v. Rapp, 38 F.4th 1234, 1244 (10th Cir. 2022) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). To establish municipal liability, a plaintiff "must first show a municipal policy or custom—either an official rule or one so entrenched in practice as to constitute an official policy." Id. (citing Monell, 436 U.S. at 694). Second, "a plaintiff must show that the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy." Id. (citing Crowson v. Washington County, 983 F.3d 1166, 1188 (10th Cir. 2020)). "To demonstrate that a municipality acted with deliberate indifference, a plaintiff may show that the municipality had 'actual or constructive notice that its action or failure to act [was] substantially certain to result in a constitutional violation' and 'consciously or deliberately [chose] to disregard the risk of harm.'" Id. (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)). "Notice can be established through a 'pattern of tortious conduct' or 'if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction.'" Id. (quoting Barney, 143 F.3d at 1308 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997))). Third, "a plaintiff must show that the policy directly caused his constitutional injury." Id. (citing Brown, 520 U.S. at 404). "A plaintiff can establish a direct causal link only by showing that the municipal practice was closely related to the deprivation of rights." Id.

## IV. Discussion

Defendants argue that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Counts I, III, and V. Mot. at 5-20. They further argue that they are statutorily immune from liability as to Counts II, IV, and VI under the Child Abuse and Neglect Act, N.M. Stat. Ann. § 32A-4-5. Id. at 20-21.

Plaintiffs argue that Officer Ramirez and Chief Kunihiro are not entitled to qualified immunity as to Counts I, III, and V. Resp. at 4-22. They only tangentially reference Counts II and VI; in fact, for some reason they interpreted Defendants' Motion as seeking judgment on the pleadings as to Counts I, III, and V, only. See id. at 2 (stating that only Counts I, III, and V "are put at issue by the Defendants' motions for judgment on the pleadings"). Although they mention N.M. Stat. Ann. § 32A-4-5, they do so only in their discussion of the Fourth Amendment seizure alleged in Count I, and apparently to argue that the statute did not permit Defendants to seize and interview L.L. because they were not investigating "child abuse." See id. at 8-9. Plaintiffs assert that they are entitled to relief on Count VI for the same reason they are entitled to relief on Count V, and, specifically, because Defendants conducted an unreasonable search of their home. See id. at 18. Plaintiffs' Response does not mention Count IV.

In their Reply, Defendants maintain that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Counts I, III, and V, ECF No. 76 at 2-8, and are entitled to statutory immunity under N.M. Stat. Ann. § 32A-4-5 as to Counts II, IV, and VI because there are no allegations that they acted in bad faith, id. at 8-13.

Because the Court finds that Defendants are entitled to judgment on the pleadings as to the federal claims, the Court limits its analysis to Counts I, III, and V, declines to exercise supplemental jurisdiction over the state law claims and, as such, dismisses without prejudice Counts II, IV, VI, and VII.[5]

---

[5]    The Court has carefully considered each of the Parties' arguments, whether discussed in this Order or not. In the interest of judicial economy, the Court limits its discussion to the issues and arguments necessary to resolve Defendants' Motion.

a.    **Count I: Fourth Amendment seizure**

The Fourth Amendment guarantees citizens the right to be "secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'"  Jones v. Hunt, 410 F.3d 1221, 1225 (10th Cir. 2005) (quoting Michigan v. Chesternut, 486 U.S. 567, 573 (1988)).  "[W]hether the person being questioned is a child or an adult is relevant to whether a person would have felt free to leave."  Halley, 902 F.3d at 1145 (alteration in original) (quotation marks and citation omitted).  Thus, "[a] young child is seized for Fourth Amendment purposes if 'no reasonable child would have believed that he was free to leave.'"  Id. (quoting Jones, 410 F.3d at 1229).

"A police officer may seize someone either by physical force or a show of authority." United States v. Roberson, 864 F.3d 1118, 1121 (10th Cir. 2017).  Where, as here, the officer does not apply physical force to restrain the subject, "a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submit[s] to the assertion of authority.'"  United States v. Salazar, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting California v. Hodari D., 499 U.S. 621, 625-26 (1991)).  "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."  Id. (quoting Hodari D., 499 U.S. at 628).

Whether a reasonable person would have believed that he was not free to terminate an encounter with government officials is based on the totality of the circumstances.  Jones, 410 F.3d at 1226.  The Tenth Circuit has identified several non-exclusive factors to guide the determination:

> 1) the threatening presence of several officers; 2) the brandishing of a weapon by an officer; 3) some physical touching by an officer; 4) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; 5) prolonged retention of a person's personal effects . . . ; 6) a request to accompany the officer to the station; 7) interaction in a nonpublic place or a small, enclosed place; 8) and absence of other members of the public.

Id. (alteration in original) (quoting United States v. Hill, 199 F.3d 1143, 1147-48 (10th Cir. 1999)) [hereinafter "Hill factors"]. None of these factors is dispositive. Id. "When viewing the totality of the circumstances, it may be that the strong presence of two or three factors demonstrates that a reasonable person would have believed that he was not free to terminate an encounter with government officials." Id.

Count I alleges that Officer Ramirez violated L.L.'s Fourth Amendment right against unreasonable seizures "by requiring that L.L. leave her MVMS class and accompany Officer Ramirez off of the MVMS campus, by removing L.L. from the MVMS campus, and by transporting L.L. to an outside location." Am. Compl. ¶ 215. It alleges that "Officer Ramirez's seizure of L.L. and removal of L.L. from MVMS were at the direction of APD Supervisors and Chief Kunihiro." Id. ¶ 216. It further alleges that Chief Kunihiro "adopted and/or acted pursuant to an official policy by which [he] allowed and authorized the involuntary detention, seizure, and arrest of students, and removal of students from school, when those students were not believed to have committed crimes[.]" Id. ¶ 249. It also alleges that "Chief Kunihiro failed to adequately and appropriate[ly] train and supervise APD personnel on Fourth Amendment standards[,]" and "failed to assign an experienced officer to the investigation of the Incident, incidents, and any matters raised by [the Female Student's] Report." Id. ¶ 251.

Defendants argue that Plaintiffs failed to show that Officer Ramirez's alleged words and actions satisfy the "show of authority" test and, as such no Fourth Amendment seizure occurred.

Mot. at 9-11. They appear to further argue that even if Officer Ramirez violated L.L.'s Fourth Amendment right against unreasonable seizures, the right was not clearly established. See id. at 12-13 (citing Douglas v. Beaver Cnty. Sch. Dist. Bd., 82 F. App'x 200, 202 (10th Cir. 2003); Doe v. Bagan, 41 F.3d 571, 575 (10th Cir. 1994)). Finally, they appear to argue that even if Officer Ramirez violated L.L.'s clearly established Fourth Amendment right against unreasonable seizures, the seizure was nevertheless objectively reasonable because "Officer Ramirez's investigation of potential abuse was taken in good-faith, in reliance on a Statute, and based upon information gleaned from an interview with a child victim . . . who disclosed L.L. had additional information regarding abuse and neglect allegations." Id. at 11. "Officer Ramirez['s] role in transporting L.L. to 'a place where the child feels secure' so interviews can be conducted 'in a language that the child uses and understands' is precisely what is contemplated under Statute." Id. (citing N.M. Stat. Ann. § 32A-4-5(D), (E)). In this regard, Defendants argue that if "officers should routinely be required to obtain a warrant before brief interviews are conducted by outsourced, trained professionals, the investigation process would be substantially thwarted, evidence left unearthed, and crimes go unsolved." Id. at 8. Defendants appear to argue that Chief Kunihiro is entitled to qualified immunity because no seizure occurred, the Amended Complaint does not indicate how he affected Officer Ramirez's investigation, and he is "entitled to rely in good faith on the requirements imposed upon law enforcement by the New Mexico Legislature under NMSA 1978, § 32A-4-5(C) to justify [his] role in the investigation of potential abuse in this case." See Mot. at 10-11.

Plaintiffs argue that when considering the Hill factors—and in particular factors 4, 5, 6, 7, and 8—a reasonable person in L.L.'s position would not feel free to terminate their encounter with Officer Ramirez. Resp. at 10-12. They argue that the law is clearly established that "an official's

14

. . . removal of a child witness from school for the purpose of interviewing the child about the crime of another, without the child's consent, is an unreasonable seizure in violation of the Fourth Amendment." Id. at 12-14 (citing Jones, 410 F.3d at 1228-29; Pacheco v. Hopmeier, 770 F. Supp. 2d 1174 (D.N.M. 2011)); see also id. at 7. Plaintiffs appear to argue that the seizure was not objectively reasonable under N.M. Stat. Ann. 32A-4-5 because Defendants were not investigating "abuse." Id. at 8-9. Finally, Plaintiffs vaguely argue that Chief Kunihiro is not entitled to qualified immunity because his actions resulted in L.L.'s seizure. Id. at 14.

In their Reply, Defendants argue that the Amended Complaint's well-pleaded allegations are insufficient "to establish a show of authority on the part of Officer Ramirez that would cause a reasonable person to conclude L.L. was not free to leave . . . the principal's office or decline transport so that interviews could be conducted at Kids, Inc." ECF No. 76 at 3; see also id. at 3-4. They also appear to argue that both Jones and Pacheco are distinguishable and do not clearly establish the constitutional right asserted. Id. at 4-5. Defendants maintain that Douglas and Bagan establish that Officer Ramirez did not violate clearly established law. Id. at 5-7. They argue that the well-pleaded allegations of the Amended Complaint "only establish Officer Ramirez's transport of L.L. to a specialized environment for secure and compassionate questioning of L.L., without any threatening conduct, and for a very short period of time – was a de minimis interference for which the Fourth Amendment's protections were not triggered." Id. at 7. Finally, Defendants maintain that they are "entitled to rely in good faith on the requirements imposed upon law enforcement by the New Mexico Legislature under NMSA 1978, § 32A-4-5(C) to justify their role in the investigation of potential abuse in this case." Id. at 2.

For the reasons that follow, the Court finds that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity because (1) no constitutional violation occurred and (2) even

15

assuming an unreasonable seizure occurred, the specific right asserted was not clearly established. The Court further finds that because no constitutional violation occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count I.

### 1. Constitutional violation

First, because Plaintiffs do not allege that L.L. was seized by force, the Court must determine whether, under the totality of the circumstances, Officer Ramirez seized L.L. by show of authority, using the <u>Hill</u> factors to guide the Court's analysis.  <u>See</u> <u>Jones</u>, 410 F.3d at 1226 (citing <u>Hill</u>, 199 F.3d at 1147-48).  As explained below, only <u>one</u> of the <u>Hill</u> factors (at most) is present in this case, and tenuously at that.

Initially, Plaintiffs appear to concede that the first, second, and third <u>Hill</u> factors—i.e., "the threatening presence of several officers; the brandishing of a weapon by an officer; [and] some physical touching by an officer;" 199 F.3d at 1147—are absent in this case.  <u>See</u> Resp. at 11-12. The Court agrees.

The Court further finds that the fourth <u>Hill</u> factor—i.e.., "use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory[,]" 199 F.3d at 1147—is absent from the Amended Complaint.  The only allegations bearing on this factor state that "[w]hen L.L. arrived at the MVMS Office, she was approached by Officer Ramirez who told L.L. that he 'had to take her' to be questioned or to answer some questions[,]" Am. Compl. ¶ 86, and "that she could take her backpack and belongings with her, or leave them in the School Office[,]" <u>id.</u> ¶ 88.  However, the Amended Complaint does not allege that Officer Ramirez used an "aggressive" tone of voice, and the Court can scarcely conceive of less "aggressive" language to explain the situation.  As such, the Court finds that the fourth <u>Hill</u> factor is absent in this case. <u>See</u> <u>United States v. Jones</u>, 701 F.3d 1300, 1305, 1314 (10th Cir. 2012) (observing that although

the officer's statement "I'm here for your marijuana plants" is more coercive than if it had been stated as a question, e.g., "do you have any marijuana plants?[,]" "[i]t does not follow . . . that a reasonable person would have been so cowed by such an accusatory assertion that he would have believed that he was not free to discontinue the encounter and go about his business[,]" and finding that the defendant could not reasonably have concluded from this isolated comment that he was not free to discontinue the encounter with the officer).

At best, Officer Ramirez's statement that he "had to take" L.L. to answer some questions satisfies the sixth <u>Hill</u> factor, which looks to whether there was "a request to accompany the officer to the station[.]" 199 F.3d at 1147-48. However, this factor does not weigh heavily in favor of finding a "show of authority" seizure, as the Amended Complaint does <u>not</u> allege that Officer Ramirez said anything about taking L.L. "to the station." <u>Id.</u> In the Court's view, an officer asking a person to accompany him to the police station is palpably more coercive than an officer telling a person that he has to take her to answer some questions.

The Court further finds that the fifth <u>Hill</u> factor—"prolonged retention of a person's personal effects[,]" 199 F.3d at 1147—is absent in this case. Defendants did not "retain" L.L.'s belongings; rather, she voluntarily chose to leave them in the school office rather than take them with her to Kids, Inc. Am. Compl. ¶ 88. And she was out of school for less than forty minutes. <u>See</u> <u>id.</u> ¶¶ 82, 95.

Finally, the seventh and eighth <u>Hill</u> factors—"interaction in a nonpublic place or a small, enclosed place . . . and absence of other members of the public [,]" 199 F.3d at 1148—are absent in this case. The Amended Complaint alleges that Officer Ramirez encountered L.L. in the "MVMS Office[,]" Am. Compl. ¶ 86; not the <u>principal's</u> office, but the <u>school</u> office, <u>see</u> <u>id.</u>, and there is no allegation that the MVMS office is a small, enclosed space. And the Amended

17

Complaint affirmatively alleges that there were other persons in the MVMS office at the time of the encounter.  <u>Id.</u> ¶ 88 (stating that "L.L. left her personal belongings with a secretary or other MVMS Personnel who were present in the MVMS Office at that time").  It also alleges that there were non-law enforcement personnel at Kids, Inc.  <u>Id.</u> ¶ 218.

Therefore, the Court finds that under the totality of the circumstances, Officer Ramirez's words and actions, as alleged in the Amended Complaint, would not have conveyed to a reasonable thirteen-year-old that she was being ordered to "restrict [her] movement[.]"  <u>Salazar</u>, 609 F.3d at 1064.  Thus, a reasonable thirteen-year-old girl would not have believed that she was not free to terminate the encounter with Officer Ramirez and, consequently, no Fourth Amendment seizure occurred.

### 2.    Clearly established

Second, even if Officer Ramirez and/or Chief Kunihiro violated L.L.'s Fourth Amendment right against unreasonable seizures, Plaintiffs have failed to carry their burden of establishing that the right was "clearly established."  <u>See</u> <u>Quinn v. Young</u>, 780 F.3d 998, 1005 (10th Cir. 2015) (explaining that a plaintiff may satisfy her burden of establishing that a right is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains'") (quoting <u>Weise v. Casper</u>, 593 F.3d 1163, 1167 (10th Cir. 2010)).

In this regard, Plaintiffs argue that <u>Jones</u>, 410 F.3d at 1228-29, and <u>Pacheco</u>, 770 F. Supp. 2d at 1227, "made clear" that "an official's removal of a student from his or her class at school and removal of a child witness from school for the purpose of interviewing the child about the crime of another, without the child's consent, is an unreasonable seizure in violation of the Fourth Amendment."  Resp. at 12-13 (footnote omitted); <u>see also</u> <u>id.</u> at 14 (same).  However, <u>Pacheco</u>

18

cannot "clearly establish" a constitutional right for purposes of the qualified immunity analysis because it is not a Supreme Court decision or published decision from the Tenth Circuit Court of Appeals. Crane v. Utah Dep't of Corrs., 15 F.4th 1296, 1306 (10th Cir. 2021) ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes.").

Furthermore, Jones does not "clearly establish" the asserted right as it does not involve a government official investigating a crime or removing a child from school; it is simply not on point. In Jones, a sixteen-year-old girl was living with her father when he committed an act of violence against her. 410 F.3d at 1223-24. The girl moved in with her mother who obtained a protective order ("TRO") on the girl's behalf. Id. at 1224. The TRO prohibited the father from having contact with the girl until further court order. Id.

The day he received the TRO, the father (a former police officer) and his new wife (a friend of the county sheriff) met with a deputy sheriff for assistance. Id. The deputy sheriff left the meeting and took a social worker to the high school with him. Id. "The two officials confronted [the girl] and told her, contrary to the terms of the TRO, that she could not live with her mother. They insisted that she either choose to live with her father, again in contravention of the TRO, or move into a shelter." Id. The deputy sheriff and social worker left the school but returned a short time later to find the girl in a counselor's office. Id.

> The counselor then left, and the two officials—[the sheriff's deputy] in uniform—proceeded to tell [the girl] for an additional "hour or two" that if she did not return to her father's house, [the sheriff's deputy] would arrest her, that her "life would be hell," that [the sheriff's deputy] and [the social worker] would "be [her] shadow until [she was] eighteen, and maybe longer," that they would ensure that her mother was sent to prison, that there was a "zero percent" chance that she would live with her mother, and that when she turned eighteen, she and her mother might be "cell mates." [The girl] cried throughout the encounter, and alleged that she was

"terrified of [the sheriff's deputy] and [the social worker]" and "did not even think of challenging" them.

Id.  The Tenth Circuit concluded that the sheriff's deputy and social worker's "threats and demands" transformed what may have initially been a consensual encounter into a seizure.[6]  Id. at 1227.

This case is nothing like Jones.  Even construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege that Officer Ramirez made "threats" or "demands" to L.L. It simply alleges that Officer Ramirez "told L.L. that he 'had to take her' to be questioned or to answer some questions[,]" Am. Compl. ¶ 86, and "that she could take her backpack and belongings with her, or leave them in the School Office[,]" id. ¶ 88.  This interaction occurred in a public place (that is not alleged to be small or enclosed) with other members of the public present.  Id. ¶¶ 19,

---

[6]     The Tenth Circuit in Jones further found that the seizure was unreasonable.  410 F.3d at 1228-29. Specifically, it held that the seizure was not "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place."  Id. (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).  The court explained:

> The complaint does not allege that [the social worker] suspected [the girl's] mother of abusive or neglectful behavior.  On the other hand, there was sufficient evidence of her father's abusiveness to both warrant transfer from his custody (which [the social worker] himself facilitated two months earlier) and the issuance of a TRO against him. Indeed, [the social worker's] demand that [the girl] leave her mother's care and enter her father's custody violated the express terms of the existing TRO. We do not see how a seizure, the alleged intended purpose of which would violate a court order, can possibly be justified at its inception. There was no legitimate governmental interest in this seizure. See Wyoming v. Houghton, 526 U.S. 295, 299–300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (we may "evaluate the search or seizure under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."). Where no legitimate basis exists for detaining a child, a seizure is plainly unreasonable. Taking the alleged facts as true, this seizure, which lasted between three to four hours, was unjustified from the beginning, and therefore cannot be said to be "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20, 88 S.Ct. 1868. Even when scrutinized under the minimal requirements of Terry, [the social worker's] alleged conduct amounts to an unreasonable seizure.

Id. at 1228-29 (footnotes omitted).  Finally, the Tenth Circuit found that the social worker was not entitled to qualified immunity because it was clearly established by January 2003 when the seizure occurred "that a seizure must be reasonable" and that "the Fourth Amendment's strictures apply to social workers."  Id. at 1229 (citations omitted).

88.  He then took her to a "safehouse" where someone else interviewed her about her and her friends' interactions with the Male Student, and then immediately returned her to school.  Id. ¶¶ 91-95, 218.  Jones does not clearly establish that such conduct results in a seizure for Fourth Amendment purposes.

Therefore, the Court finds that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Count I because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a Fourth Amendment violation and (2) Plaintiffs failed to carry their burden of establishing that, if a seizure occurred, the right asserted was clearly established at the time of the conduct.  The Court further finds that because no constitutional violation occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count I. Trigalet v. City of Tulsa, 239 F.3d 1150, 1150-51, 1154-56 (10th Cir. 2001) (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases); Butler v. City of Prairie Village, 172 F.3d 736, 747 (10th Cir. 1999) ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (quoting Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)).

   **b.    Count III: Fourteenth Amendment procedural and substantive due process**

"The Supreme Court has recognized that parents have a fundamental right to determine 'the care, custody, and control of their children.'"  Lee v. Poudre Sch. Dist. R-1, 135 F.4th 924, 933 (10th Cir. 2025) (quoting Troxel v. Granville, 530 U.S. 57, 66 (2000)).  The "familial right of

association" is a substantive due process right guaranteed by the Fourteenth Amendment.[7]  See Halley, 902 F.3d at 1153 (citing Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993)).

"'In procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'"  Moore v. Bd. of Cnty. Comm'rs, 507 F.3d 1257, 1259 (10th Cir. 2007) (alteration in original) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

Count III alleges that Officer Ramirez violated Ms. Hubbard's substantive and procedural due process rights when he "exercised control over, detained, and seized L.L. by requiring that L.L. accompany Officer Ramirez off of the MVMS campus, by removing L.L. from the APS campus, and by transporting L.L. to an outside location" without prior notice and an opportunity to be heard.  Am. Compl. ¶¶ 290-91.  It further alleges that Defendants' failure to contact Ms. Hubbard, and Chief Kunihiro's failure to "assign an experienced officer to the investigation of the" Female Student's allegations, "shock the conscience."  Id. ¶ 307.  It further alleges that APD, through Chief Kunihiro, adopted a policy that authorizes "involuntary detention, seizure, and arrest of students and removal of students from school, when those students were not believed to have committed a crime . . . , without providing notice or an opportunity to be heard by the parents of the students."  Id. ¶ 311.  It also vaguely alleges that APD and Chief Kunihiro failed to properly train and supervise APD officers on Fourteenth Amendment standards.  Id. ¶¶ 313-14.

Defendants argue that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity on Count III.  Mot. at 17.  Specifically, they argue that Officer Ramirez, "with

---

[7]    The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

'instructions' from Chief Kunihiro, took immediate steps to both investigate serious allegations of sexual abuse of children and to protect the health and welfare of L.L., by effectuating her transport for an interview to be conducted by the trained professionals at Kids, Inc." Id. (quoting Am. Compl. ¶ 64). They argue that they were simply "[f]ollowing the interview process mandated by" N.M. Stat. Ann. § 32A-4-5, and "[n]othing in the Statute requires law enforcement to notify parents or guardians prior to interviewing the children." Id. They argue that "[a]ny obligation to notify parents prior to an interview, if applicable under the circumstances, falls solely on CYFD." Id. They argue that nothing about Officer Ramirez and Chief Kunihiro's alleged conduct shocks the conscience. Id.

In their Response, Plaintiffs argue that the Amended Complaint sufficiently alleges that Officer Ramirez violated Ms. Hubbard's Fourteenth Amendment due process rights by "requesting L.L.'s information, coordinating with APS Personnel for the removal of L.L. from class, seizing and removing [L.L.] from MVMS, and requiring that L.L. answer questions in a custodial interview conducted at Kids, Inc. at APD's request," without first contacting Ms. Hubbard. ECF No. 61 at 19-20. They argue that this conduct was "directed toward and intended to subvert and interfere with Ms. Hubbard's protected relationship with L.L." Id. at 20. They further argue that "L.L.'s removal from school was not justified by any need for haste, exigency, or any facts upon which a reasonable official might believe L.L. was in imminent danger of serious injury during school that day." Id. Finally, they argue that Defendants had no interest in removing L.L. from school without first notifying Ms. Hubbard and obtaining her consent. Id. They argue that the law that clearly establishes Ms. Hubbard's Fourteenth Amendment rights is cited in their Response to the APS Defendants' Motion for Judgment on the pleadings, id. at 19, which they impermissibly

attempt to "incorporate[] by reference[,]" <u>id.</u> at 8.[8]  In their Response to the instant Motion, they

cite <u>Roska</u>, 328 F.3d at 1245, and <u>Lowrey v. Mosley</u>, No. CIV 23-0868 JB/JMR, 2024 U.S. Dist.

LEXIS 177845, at *85-87 (D.N.M. Sep. 30, 2024), for the broad principle that "[c]hildren have a

constitutionally-protected liberty interest in a relationship with their parents, and vice versa."  ECF

No. 61 at 19.

      For the reasons that follow, the Court finds that Officer Ramirez and Chief Kunihiro are

entitled to qualified immunity because (1) no constitutional violation occurred and (2) even

assuming a due process violation occurred, the specific rights asserted were not clearly established

at the time of the conduct.  The Court further finds that because no constitutional violation

occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count III.

### 1.    Substantive due process

### A.    Constitutional violation

      Alleged violations of the familial right to association are subject to a "shocks-the-

conscience" standard.  <u>Halley</u>, 902 F.3d at 1154-55.  When a plaintiff asserts that a government

official has interfered with the plaintiff's Fourteenth Amendment right of familial association, "it

shocks the conscience when: (1) the officials intended to deprive the plaintiff of a protected

relationship with a family member, and (2) the officials' intrusion into the relationship was not

warranted by state interests in the health and safety of the family member."  <u>Id.</u> at 1154 (citing

<u>Thomas</u>, 765 F.3d at 1196).  "Together, the facts alleged by the plaintiff on these points must meet

the shocks-the-conscience standard."  <u>Id.</u> at 1154-55.  To satisfy this standard, the officials must

---

[8]    Pursuant to the Local Rules of this District, "[a] party may adopt by reference <u>another party's</u> motion or other paper by making specific reference to the filing date and docket number of such motion or other paper." D.N.M.LR-Civ. 7.1(a) (emphasis added).  Neither the Local Rules of Civil Procedure nor the Federal Rules of Civil Procedure permit a party to adopt by reference their own motion or other paper.  Consequently, the Court will not consider their Response to the APS Defendants' Motion for Judgment on the Pleadings.

have "'unduly burdened' that relationship in a manner that was 'egregious,' 'outrageous,' 'unrestrained,' 'brutal,' and a display of arbitrary power being used 'as an instrument of oppression.'"  Doe v. Woodard, 912 F.3d 1278, 1301 (10th Cir. 2019).  The Amended Complaint fails to plausibly allege such conduct.

First, the Court finds that the Amended Complaint fails to plausibly allege that Officer Ramirez and Chief Kunihiro intended to deprive Ms. Hubbard of her relationship with L.L., through conscience-shocking conduct or otherwise.  In this regard, the Amended Complaint alleges that Officer Ramirez, acting at Chief Kunihiro's direction, interfered with Ms. Hubbard's relationship with L.L. when he "exercised control over, detained, and seized L.L. by requiring that L.L. accompany Officer Ramirez off of the MVMS campus, by removing L.L. from the APS campus, and by transporting L.L. to an outside location" without first contacting Ms. Hubbard ECF No. 14 ¶¶ 64-65, 290-91.  Although the Amended Complaint makes the conclusory allegation that Officer Ramirez and Chief Kunihiro's actions "shock the conscience" and "demonstrate their intentional, deliberate, reckless, and callous disregard for and gross indifference of the rights of Ms. Hubbard and the known risks of serious harm to Ms. Hubbard[,]" id. ¶ 307, unsupported conclusory allegations and legal conclusions masquerading as facts are not entitled to the assumption of truth, Iqbal, 556 U.S. at 679.  The only well-pleaded allegations concerning Officer Ramirez's removal of L.L. from school reflect that he was investigating whether L.L. was a witness to or victim of "criminal sexual contact" by the Male Student.   Id. ¶¶ 30, 35-36, 39, 44, 46, 58, 60, 65, 68-69, 91.  None of the well-pleaded allegations permit a plausible inference that Officer Ramirez and Chief Kunihiro engaged in conscience-shocking conduct intending to deprive Ms. Hubbard of her relationship with L.L.  See Woodard, 912 F.3d at 1302 (finding that even if the complaint could be construed as alleging that a case worker who performed a visual examination

25

of a child for signs of abuse and photographed the child intended to interfere in the mother's familial association with the child, it failed to allege a conscience-shocking interference because "the complaint lacked allegations that [the social worker's] motivation was anything other than to investigate potential child abuse").

Second, even if the Amended Complaint plausibly alleged that Defendants intended to interfere with Ms. Hubbard's relationship with L.L., it does not plausibly allege that Defendants "'unduly burdened' or created an 'unwarranted intrusion' on the plaintiff's right to familial association." Halley, 902 F.3d at 1155. To determine whether Defendants unduly burdened or created an unwarranted intrusion on Ms. Hubbard's right to familial association, the Court balances Ms. Hubbard's interest in her protected relationship with L.L. with the state's interest in L.L.'s safety. Id. at 1153-54; Griffin, 983 F.2d at 1547. Plaintiffs do not plausibly allege that Defendants' actions affected Ms. Hubbard's custody rights or relationship with L.L. in any way; in fact, Ms. Hubbard did not even know L.L. was removed from class until Officer Ramirez informed her about it the next day. Id. ¶¶ 142-43. Furthermore, Defendants had a substantial interest in removing L.L. from MVMS for the interview at Kids, Inc., as they were investigating whether the Male Student was repeatedly engaging in "criminal sexual contact" with female students, and whether L.L. and the other girls were victims of or witnesses to that conduct. See id. ¶ 142 (Officer Ramirez describing the allegations against the Male Student's as "constantly . . . touching the girls and even as far as the word 'rape' was used"); see also id. ¶¶ 24, 30, 34-36, 44, 60, 76, 93. On balance, the intrusion or burden, if there was one, was not undue nor unwarranted.

Moreover, the alleged interference occurred during school hours when Ms. Hubbard would not otherwise have been with L.L. "To the extent [L.L.] was separated from [Ms. Hubbard] during a time when she would have wanted [Ms. Hubbard] to be present, this is a far cry from the

substantial separation required in other cases." Woodard, 912 F.3d at 1302 (citing Thomas, 765 F.3d at 1188-90, 1197-98 (finding that the complaint stated a Fourteenth Amendment claim where the plaintiff's daughter was allegedly separated coercively for weeks in a mental health ward); Roska, 328 F.3d at 1238-39, 1246 (finding that the complaint stated a Fourteenth Amendment claim where the child was removed from the home and placed under protective care for a week)). For these reasons, the Court finds that the Amended Complaint fails to state a Fourteenth Amendment substantive due process claim for violating Ms. Hubbard's right of familial association with L.L. See id.

### B.    Clearly established

Even if Officer Ramirez and Chief Kunihiro violated Ms. Hubbard's substantive due process right of familial association, the Court finds that Plaintiffs have failed to carry their burden of establishing that the right was "clearly established." See Quinn, 780 F.3d at 1005. In their Response, Plaintiffs cite Roska, 328 F.3d at 1245, and Lowrey, 2024 U.S. Dist. LEXIS 177845, at *85-87, as cases clearly establishing that "[c]hildren have a constitutionally-protected liberty interest in a relationship with their parents, and vice versa." ECF No. 61 at 19.

However, Lowrey cannot "clearly establish" a constitutional right for purposes of the qualified immunity analysis because it is not a Supreme Court decision or published decision from the Tenth Circuit Court of Appeals. Crane, 15 F.4th at 1306 ("District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes."). And Roska is inapposite because in that case the plaintiffs asserted that the defendants violated their procedural due process rights when the defendants removed the plaintiffs' son from the plaintiffs' home without notice and a hearing. 328 F.3d at 1245. As such, Roska did not put Defendants on notice that briefly taking L.L. from school to a safehouse to be interviewed regarding whether she

27

witnessed or was a victim of criminal sexual contact by the Male Student violated Ms. Hubbard's Fourteenth Amendment substantive due process right of familial association. Halley, 902 F.3d at 1157 (rejecting the plaintiff's reliance on Roska to establish his Fourteenth Amendment substantive due process right of familial association because Roska is a procedural due process case, not a substantive due process case).

Finally, in Halley, the Tenth Circuit held, under similar facts, that the child's substantive due process rights were not clearly established. In that case, state officials received an anonymous call voicing concern for the safety of a six-year-old boy, alleging that his father used drugs and had a prior arrest record for possessing drugs and a firearm. 902 F.3d at 1142. State officials picked the boy up from school and drove him to a safehouse for an interview. Id. at 1143. The interview lasted about forty minutes, after which an official transported the boy back to school. Id. The boy later sued the state officials alleging a violation of his Fourteenth Amendment substantive due process right to familial association. Id. at 1143, 1153. The district court denied the officials' motions for summary judgment on the basis of qualified immunity, and the officials appealed. Id. at 1143. On appeal, the Tenth Circuit declined to determine whether a constitutional violation occurred, concluding instead that "[e]ven if the officials did violate [the boy's] substantive due process rights, . . . the right was not clearly established, and so the defendants are entitled to qualified immunity." Id. at 1156. Specifically, it found that the boy "has not shown that reasonable officials would have known that the short seizure here would constitute an unwarranted interference with a family relationship[.]" Id.

Likewise, here, Ms. Hubbard has not shown that reasonable officials would have known that L.L.'s brief removal from class for a safehouse interview regarding whether she was a victim

of or witness to student-on-student criminal sexual contact would constitute an unwarranted interference with the family relationship.

Therefore, the Court finds that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Count III's substantive due process claim because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a constitutional violation and (2) Plaintiffs failed to carry their burden of establishing that even if a substantive due process violation occurred, the right asserted was clearly established at the time of the conduct. And because no constitutional violation occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count III's substantive due process claim. See Trigalet, 239 F.3d at 1150-51, 1154-56 (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases); Butler, 172 F.3d at 747 ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); Wilson, 98 F.3d at 1255 ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

### 2. Procedural due process

### A. Constitutional violation

Procedural due process claims are examined in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). As to the first question, "the interest of parents in the care, custody, and control of their children[]is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court."

Troxel, 530 U.S. at 65.  The Tenth Circuit has held that absent extraordinary circumstances involving an imminent threat to the safety of a child, parents are entitled to notice and a hearing before the state may remove a child from their custody.  Roska, 328 F.3d at 1245.

Here, the Court finds that even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not plausibly allege that Defendants removed L.L. from Ms. Hubbard's custody.  See supra Section IV(b)(1).  Rather, it alleges that Officer Ramirez briefly took L.L. from school to a safehouse for an interview, and then immediately returned L.L. to school.  See Am. Compl. ¶¶ 30, 35, 39, 44, 46, 58, 60, 65, 68-69, 91.  Plaintiffs cite no authority holding that this affected Ms. Hubbard's custody rights.  Cf. Woodard, 912 F.3d at 1302 (observing that the search of the plaintiff's daughter that allegedly violated the plaintiff's due process right to familial association occurred "during school hours when [the child's] mother would not otherwise have been with her" and "[t]o the extent the child was separated from her mother during a time when she would have wanted her mother to be present, this is a far cry from the substantial separation required in other cases").

Because Defendants did not remove L.L. from Ms. Hubbard's custody, the Court finds that they did not violate her procedural due process rights.  See Dees v. County of San Diego, 960 F.3d 1145, 1153 (9th Cir. 2020) (holding that social worker's alleged seizure and interview of child at school did not implicate the parents' Fourteenth Amendment due process right to familial association because the parents did not allege that they "actually lost" custody of the child).

## B.    Clearly established

Even if Defendants violated Ms. Hubbard's procedural due process rights by briefly taking L.L. from school to a safehouse to be interviewed as to whether she witnessed or was a victim of criminal sexual contact by the Male Student, the Court finds that the asserted right was not clearly

established.  In their Response to the instant Motion, Plaintiffs argue that the Tenth Circuit's jurisprudence on Fourth Amendment seizures "applies with obvious clarity to the [Defendants'] . . . actions in this case."  ECF No. 61 at 21.  In this regard, they argue, without analysis, that Jones and Pacheco "are directly on point and controlling."  Id.

However, the Court has already found that as a district court case, Pacheco cannot clearly establish a constitutional right for purposes of the qualified immunity analysis.  See supra Section IV(a)(2) (citing Crane, 15 F.4th at 1306).  The Court has further found that Jones is not sufficiently on point to clearly establish the Fourth Amendment right Plaintiffs assert in Count I because it does not involve a government official investigating a crime or removing a child from school.  See id.  In fact, Jones did not involve any claims by the child's mother, much less a Fourteenth Amendment procedural due process claim regarding the right to familial association.  Rather, as relevant to the appeal, Jones involved only a claim by the child that the sheriff's deputy and social worker violated her Fourth Amendment right against unreasonable seizures.[9]  410 F.3d at 1225. For these reasons, the Court finds that Jones does not clearly establish the procedural due process right asserted by Ms. Hubbard.

Because Plaintiffs have failed to cite any precedent clearly establishing that a parent or guardian has the Fourteenth Amendment right to notice and a hearing before their child is briefly removed from school, taken to a safehouse for an interview as to whether they witnessed or were the victim of a student-on-student crime, and immediately returned to school, the Court finds that Plaintiffs have failed to carry their burden of demonstrating that the right asserted by Ms. Hubbard was clearly established on November 4, 2024.

---

[9]    Although not relevant to the appeal, the girl "also asserted claims against the Sandoval County Board of Commissioners for failure to adequately supervise and train, and sued all defendants claiming the state tort of false imprisonment."  Jones, 410 F.3d at 1225 n.1.

Therefore, the Court finds that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Count III's procedural due process claim because (1) even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a constitutional violation and (2) Plaintiffs failed to carry their burden of establishing that even if a procedural due process violation occurred, the right asserted was clearly established at the time of the conduct. And because no constitutional violation occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count III. See Trigalet, 239 F.3d at 1150-51, 1154-56 (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases); Butler, 172 F.3d at 747 ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); Wilson, 98 F.3d at 1255 ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

## C.    Count V: Fourth Amendment search

The Fourth Amendment guarantees citizens the right to be "secure in their persons . . . against unreasonable searches . . . ." U.S. Const. amend. IV.  "Searches inside a home without a warrant are presumptively unreasonable." Lundstrom v. Romero, 616 F.3d 1108, 1128 (10th Cir. 2010).  However, there are "a few carefully established exceptions" to the warrant requirement. United States v. Harrison, 639 F.3d 1273, 1278 (10th Cir. 2011) (citing United States v. Silva-Arzeta, 602 F.3d 1208, 1213 (10th Cir. 2010)).  "Voluntary consent to search is one such exception." Id.  "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).  "The

exception applies when the government proves (1) the officers received either express or implied consent and (2) that consent was freely and voluntarily given." United States v. Guillen, 995 F.3d 1095, 1103 (10th Cir. 2021).

"To satisfy the first prong of the voluntariness requirement, [an individual's] consent must be clear, but it need not be verbal. Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." United States v. Guerrero, 472 F.3d 784, 789-90 (10th Cir. 2007). "The second prong, requiring that the consent be free of coercion, turns on whether a reasonable person would believe he was free to leave or to deny the officer's request to search." Id. at 790. In determining whether consent was voluntary or coerced, the Court considers the following:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

Id. (quoting United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996)). Other factors courts consider include:

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, . . . , [and] the physical and mental condition and capacity of the [individual] . . . . Whether an officer reads [the individual] his Miranda rights, obtains consent pursuant to a claim of lawful authority, or informs [the individual] of his or her right to refuse consent . . . .

 United States v. Harrison, 639 F.3d 1273, 1278 (10th Cir. 2011) (quoting United States v. Sawyer, 441 F.3d 890, 895 (10th Cir. 2006)).

Count V alleges that Officer Ramirez violated Plaintiffs' Fourth Amendment right against unreasonable seizures on November 5, 2024 when he, "at the direction of or with the approval of

his APD supervisors and Chief Kunihiro," searched their home without a warrant, probable cause,

or reasonable suspicion that Plaintiffs had committed a crime.  Am. Compl. ¶¶ 332-33.  It further

alleges that Chief Kunihiro

> adopted and/or acted pursuant to an official policy, practice, and custom by which
> APD and Chief Kunihiro allowed and authorized APD police officers to: conduct
> warrantless searches of the residences of child victims or witnesses (not involving
> lawful investigations of child abuse or neglect by a family member); to apply
> disparate standards for searches depending on the race, ethnicity, and socio-
> economic status of the persons searched, to wit, engage in unlawful, warrantless
> searches of the homes of persons residing in lower-income areas of Alamogordo,
> New Mexico, known by APD, its administrators, and officers, to be primarily-
> occupied by persons of color and persons of limited economic means, although the
> persons are witnesses or victims of criminal activity, not suspects; to represent
> lawful authority to conduct a search when no valid basis for a warrantless search
> existed; and to use deception and coercion as a method of gaining cooperation with
> an unlawful search.

Id. ¶ 356.  It also alleges that Chief Kunihiro "failed to: adopt a policy addressed to searches and

seizures of witnesses and victims (as opposed to criminal suspects or delinquent children); . . .

adequately and appropriately train and supervise APD personnel on Fourth Amendment

standards[,]" and "failed to assign an experienced officer to the investigation of the Incident,

incidents, or matters raised by [the Female Student's] Report."  Id. ¶ 358; see also id. ¶ 359.

Defendants argue that the Amended Complaint establishes that "Plaintiffs freely and

voluntarily consented to Officer Ramirez's search performed at the request of the welfare check

cross-reported to the Alamogordo Police Department by CYFD."  Mot. at 15.  They further argue

that "Plaintiffs do not allege, with any factual specificity, what role Chief Kunihiro may have had

as to this interaction."  Id. at 16.

Plaintiffs argue that Mr. Laner did not consent to Officer Ramirez's search of the home.

Resp. at 16.  Plaintiffs also argue that there was no exigency requiring a warrantless search of the

home.  Id. at 16-17.  They argue that consent cannot be established by mere "acquiescence to a

claim of lawful authority." Id. at 17 (citing Bumper v. North Carolina, 391 U.S. 543, 549 (1968));

see also id. (citing Minafee v. Bernalillo Cnty. Bd. of Comm'rs, 664 F. Supp. 3d 1283, 1306-07

(D.N.M. 2023); Lowther v. Children Youth & Fams. Dep't, No. 1:18-cv-00868-KWR-JFR; No.

1:19-cv-01205-KWR-JFR, 2020 U.S. Dist. LEXIS 128330 (D.N.M. July 21, 2020)).

　　　In their Reply, Defendants maintain that the Amended Complaint establishes that Plaintiffs

consented to Officer Ramirez's search.  ECF No. 76 at 7.  They further argue that "Officer Ramirez

and Chief Kunihiro are entitled to qualified immunity based on a reasonable mistake made;

namely, a referral by CYFD that suggested allegations of neglect also required investigation." Id.

(citing Am. Compl. ¶¶ 47-50).

　　　For the reasons that follow, the Court finds that Officer Ramirez and Chief Kunihiro are

entitled to qualified immunity because although it was clearly established on November 5, 2024

that the warrantless entry into a residence to perform a welfare check is unreasonable absent

exigent circumstances or consent, see Lowther v. Child. Youth & Fam. Dep't, 101 F.4th 742, 749-

50, 766 (10th Cir. 2024); McInerney v. King, 791 F.3d 1224, 1228-30, 1236-38 (10th Cir. 2015);

Lundstrom, 616 F.3d at 1115-18, 1129, Mr. Laner impliedly consented, freely and voluntarily, to

Officer Ramirez's brief search of the residence.  Therefore, no constitutional violation occurred;

and because no constitutional violation occurred, the City of Alamogordo is entitled to judgment

on the pleadings as to Count V.

### 1.　　Consent

　　　As to the first prong of the voluntary consent requirement, the well-pleaded facts establish

that Mr. Laner consented to Officer Ramirez's search of the home.

　　　The Amended Complaint alleges that when Officer Ramirez arrived at Plaintiffs' home on

November 5, 2024, "Mr. Laner stepped out of the residence to speak with Officer Ramirez." ECF

No. 14 ¶ 136.  Officer Ramirez stated that he was there because "there was a CPS report that came

in last night and I'm just here to follow up on it."  Id. ¶ 137.  Officer Ramirez asked if Mr. Laner

was L.L.'s legal guardian, and "Mr. Laner stated that he was not, that his mother, Nancy Hubbard,

is L.L.'s guardian and that Ms. Hubbard was at work."  Id. ¶ 138.  Officer Ramirez then instructed

Mr. Laner to call Ms. Hubbard to let her know that Officer Ramirez was at their home, and Mr.

Laner complied.  Id. ¶ 139.  Officer Ramirez "took the phone from Mr. Laner" and told Ms.

Hubbard that the previous day a CPS report was generated regarding the Male Student "allegedly

touching the girls and even as far as the word 'rape' was used, and we're just trying to find out

exactly what is going on."  Id. ¶ 142.  He also informed Ms. Hubbard that L.L. had been "pulled

from school for interviews."  Id.  He stated that "L.L.'s name 'did come up in that CPS intake and,

basically, I just have to follow up on it.'"  Id. ¶ 144.  Ms. Hubbard informed Officer Hubbard that

L.L. had not discussed with her any incident involving the Male Student, and gave Officer Ramirez

permission "to speak with L.L. about it and that her son, Alex, was at home and would be there

and could listen in."  Id. ¶ 145.  "Officer Ramirez stated that he could not ask L.L. questions and

that is why she was taken to Kids, Inc. because they specialize in interviewing kids."  Id. ¶ 146.

Ms. Hubbard stated that she would speak with L.L. about it after work and that she would relate

any information to Officer Ramirez.  Id. ¶¶ 147, 149.

"After Officer Ramirez concluded his call with Ms. Hubbard, he stated to Mr. Laner that

he had to enter the residence to make sure that there was food, running water, and electricity."  Id.

¶ 152.  "Officer Ramirez did not ask for permission to enter the Hubbard/Laner Home."  Id. ¶ 155.

"Mr. Laner interpreted Officer Ramirez's statements that he 'had to' enter the Hubbard/Laner

Home to make sure that there was food, water, and electricity, as being mandatory."  Id. ¶ 156.

"Mr. Laner did not believe he had the right or ability to refuse to allow Officer Ramirez entry into

the home, and Mr. Laner did not want to interfere . . . ."  Id.  "Mr. Laner did not interfere with

Officer Ramirez's entry into the Hubbard/Laner Home."  Id. ¶ 157.  "Officer Ramirez entered the

Hubbard/Laner Home where he examined the main living room and kitchen areas."  Id. ¶ 152.

The Court finds that even construed in the light most favorable to Plaintiffs, the Amended

Complaint alleges that Mr. Laner impliedly consented to Officer Ramirez's search through

acquiescence.  See Jones, 701 F.3d at 1321 (collecting cases on implied consent to search home).

The test for implied consent is whether the officer reasonably believed the search to be consensual.

Id. (citing United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998)).  Here, Officer Ramirez

told Mr. Laner that "he had to enter the residence to make sure that there was food, running water,

and electricity[,]" id. ¶ 152, and "Mr. Laner did not interfere with Officer Ramirez's entry into the

Hubbard/Laner Home[,]" id. ¶ 157.  Indeed, Mr. Laner "did not believe he had the right or ability

to refuse" the search, id. ¶ 156, which confirms (and explains) his acquiescence.  As such, Officer

Ramirez reasonably believed Mr. Laner impliedly consented to the search.  See Jones, 701 F.3d at

1306, 1318-19 (finding that the defendant consented to an officer's search of his home where the

officer "indicated that he wanted to search [the defendant's] residence" and the defendant "never

told the officers that he did not want them to search his residence or otherwise openly refuse

consent to a search of his residence").

## 2.    Freely and voluntarily given

As to the second prong of the voluntary consent requirement, the well-pleaded facts and

relevant factors establish that Mr. Laner's consent was freely and voluntarily given.

The Amended Complaint does not allege the threatening presence of several officers;

indeed, it does not allege the presence of any officer other than Officer Ramirez.  See ECF No. 14

¶¶ 133-67.  Additionally, the Amended Complaint does not allege that Officer Ramirez brandished

his weapon, physically touched any of the Plaintiffs who were present, retained any of Plaintiffs' personal effects, or requested them to accompany him to the police station. See id. Furthermore, the Amended Complaint does not allege physical mistreatment or the use of violence, threats, promises, inducements, deception, or trickery. See id. It does not allege that Plaintiffs suffer from diminished physical condition or mental capacity, and whether Officer Ramirez read Plaintiffs their Miranda rights is irrelevant in this case. See id.

Nor does it allege that Officer Ramirez used "aggressive language or tone of voice indicating that compliance with an officer's request is compulsory[.]" Guerrero, 472 F.3d at 790 (quoting Sanchez, 89 F.3d at 718). Although Officer Ramirez stated that "he had to enter the residence to make sure that there was food, running water, and electricity[,]" Am. Compl. ¶ 152, this statement cannot fairly be construed as "aggressive," and the Amended Complaint does not allege that he used an aggressive tone of voice. Even conceding that Officer Ramirez's statement that "he had to enter the residence" is more coercive than asking for permission to enter the residence, "[i]t does not follow . . . that a reasonable person would have been so cowed by such" a statement "that he would have believed that he was not free to" refuse consent to search. Jones, 701 F.3d at 1314. This is especially so when considering the totality of the circumstances as alleged in the Amended Complaint. Even construing the allegations in the light most favorable to Plaintiffs, from his arrival at Plaintiffs' home Officer Ramirez had been courteous and professional, stating to Mr. Laner that he was "just [there] to follow up on" a CPS report. Am. Compl. ¶ 137. He explained over the phone to Ms. Hubbard the circumstances regarding the Male Student that he was investigating, id. ¶ 142, indicated that he "just [had] to follow up" on the CPS report, id. ¶ 144, and acknowledged that "it's kind of alarming if police show up and want to ask questions[,]" id. ¶ 148. When considering the entire interaction, Officer Ramirez's statement that "he had to

enter the residence to make sure that there was food, running water, and electricity" cannot be construed as "aggressive."

Next, Officer Ramirez did not obtain consent pursuant to a lawful claim of authority. He did not, for example, state that he had a warrant (which would have indicated to Mr. Laner that he had a <u>lawful</u> claim to enter the residence). <u>See</u> <u>Bumper</u>, 391 U.S. at 548 (holding that consent to search a home is not free and voluntary once the official conducting the search asserts that he possesses a warrant). In fact, the Amended Complaint does not allege that Officer Ramirez told Mr. Laner that the CPS report he was following up on identified L.L. as a victim of physical neglect. The Court concedes that when Officer Ramirez <u>first arrived</u>, told Mr. Laner that he was following up on a CPS report, Am. Compl. ¶ 137, and asked if Mr. Laner was L.L.'s legal guardian, <u>id.</u> ¶ 138, it may have been reasonable for Mr. Laner to believe that Officer Laner was investigating a report that L.L. was being neglected at home. However, as the situation progressed it would have become clear to a reasonable person that Officer Ramirez was <u>not</u> investigating a report that L.L. was being neglected at home. Specifically, after Mr. Laner called Ms. Hubbard at work,

> Officer Ramirez took the phone from Mr. Laner and stated to Ms. Hubbard: "There was a CPS report that came in last night regarding an incident that happened sometime within this last year to now with her friends and a boy from school. There's allegations that this boy has been constantly, I guess, allegedly touching the girls and even as far as the word 'rape' was used, and we're just trying to find out exactly what is going on. Yesterday, I don't know if she told you she did get pulled from school for interviews."

<u>Id.</u> ¶ 142. At this point, a reasonable person in Mr. Laner's position would not believe that a police officer who was investigating whether a male student inappropriately touched L.L. had lawful authority to enter the home to check for electricity, running water, and food. Because Officer Ramirez did not assert, explicitly or implicitly, that he had a lawful claim of authority to enter the home, Mr. Laner cannot be said to have "acquiesced" to a lawful claim of authority.

The few factors that <u>could</u> be construed in favor of a finding of coerced consent weigh minimally in favor of such a finding, if at all.  Although the interaction between Plaintiffs and Officer Ramirez appears to have occurred in a nonpublic place in the absence of other members of the public, there are no well-pleaded allegations from which the Court could plausibly infer that these facts contributed to Mr. Laner's consent to the search.

Finally, although the Amended Complaint does not allege that Officer Ramirez told Mr. Laner that he had the right to refuse consent, he was not required to, and his failure to do so does not <u>per se</u> establish that consent was coerced.  See <u>United States v. Drayton</u>, 536 U.S. 194, 206-07 (2002).

> The [Supreme] Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search. See, <u>e.g.</u>, <u>Ohio v. Robinette</u>, 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the <u>sine qua non</u> of an effective consent." <u>Ibid.</u> Nor do this Court's decisions suggest that even though there are no <u>per se</u> rules, a presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate. Instead, the Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning. See, <u>e.g.</u>, <u>Schneckloth</u>, <u>supra</u>; <u>Robinette</u>, <u>supra</u>, at 39–40, 117 S.Ct. 417.

<u>Id.</u>  Thus, without more, failure to inform an individual of the right to refuse consent to search does not establish that the consent was involuntary.  See, e.g., <u>United States v. McKinney</u>, 470 F. Supp. 2d 1226, 1234 (D. Kan. 2007).

Based on the totality of the circumstances, the Court finds that Mr. Laner freely and voluntarily gave Officer Ramirez implied consent to enter Plaintiffs' home to make sure that there was food, running water, and electricity.

Therefore, the Court finds that Officer Ramirez and Chief Kunihiro are entitled to qualified immunity as to Count V because even when construed in the light most favorable to Plaintiffs, the Amended Complaint does not allege a violation of Plaintiffs' Fourth Amendment right against unreasonable searches. And because no constitutional violation occurred, the City of Alamogordo is entitled to judgment on the pleadings as to Count V. See Trigalet, 239 F.3d at 1150-51, 1154-56 (holding that there can be no municipal liability where no underlying constitutional violation occurred, and collecting cases); Butler, 172 F.3d at 747 ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); Wilson, 98 F.3d at 1255 ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

### d.    Counts II, IV, VI, and VII: Claims under New Mexico law

Having found that the City of Alamogordo, Officer Ramirez, and Chief Kunihiro are entitled to judgment on the pleadings as to all federal claims asserted against them, and having found that the APS Defendants are entitled to judgment on the pleadings as to all federal claims asserted against them in a separate, contemporaneously filed Order, all that remains are Plaintiffs' state law claims under the New Mexico Civil Rights Act, N.M. Stat. Ann. § 41-4A-3, and for spoliation of evidence. These claims require interpretation of the New Mexico Constitution and New Mexico Civil Rights Act better left to New Mexico state courts.

Title 42, United States Code, section 1367 provides that when all claims over which this Court has original jurisdiction have been dismissed, the Court may "decline to exercise supplemental jurisdiction[.]" 28 U.S.C. § 1367(c). While the language of § 1367(c) is discretionary, the Tenth Circuit has indicated that "[w]hen all federal claims have been dismissed,

the court may, <u>and usually should</u>, decline to exercise jurisdiction over any remaining state claims." <u>Koch v. City of Del City</u>, 660 F.3d 1228, 1248 (10th Cir. 2011) (emphasis added) (quoting <u>Smith v. City of Enid ex rel. Enid City Comm'n</u>, 149 F.3d 1151, 1156 (10th Cir. 1998)); <u>see also</u> <u>Bauchman ex rel. Bauchman v. W. High Sch.</u>, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (quotation marks and citation omitted)). The Supreme Court has further advised that, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966). "The Court finds this admonition particularly relevant here because the New Mexico state appellate courts have not yet had the opportunity to fully address and interpret the provisions of the NMCRA, which was enacted only four years ago." <u>Trujillo v. City of Albuquerque</u>, 756 F. Supp. 3d 1200, 1216 (D.N.M. 2024). "Because the remaining claims under the NMCRA . . . would require the Court to unnecessarily make decisions of state law, the Court will not exercise supplemental jurisdiction over these claims." <u>Id.</u>

## V.    Conclusion

Accordingly, it is **HEREBY ORDERED** that:

1.    Defendants the City of Alamogordo, David Kunihiro, and Aaron Ramirez's Motion for Judgment on the Pleadings and for Qualified Immunity, ECF No. 50, is **GRANTED**;

2.    The City of Alamogordo, David Kunihiro, and Aaron Ramirez are entitled to **JUDGMENT** as to Counts I, III, and V of the Amended Complaint;

3.    Counts II, IV, VI, and VII are **DISMISSED WITHOUT PREJUDICE**;

4.      All other pending motions are **DENIED AS MOOT**; and

5.      This case is now **CLOSED**.


**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE